### NATIONAL METAL WEATHER STRIP CO. v. BREDIN et al.

(Circuit Court of Appeals, Third Circuit. April 26, 1911.)

No. 1,471 (26).

1. PATENTS (§ 318*)—INFRINGEMENT—PROFITS RECOVERABLE.

Where a defendant made and sold weather strips for the equipment of windows, consisting of a frame strip, a sash strip, and a meeting rail strip, the frame strip only being an infringement of complainant's patent, the profits made on such frame strip are alone recoverable in a suit for the infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

2. PATENTS (§ 318*)—INFRINGEMENT—COMPUTATION OF PROFITS.

In computing the entire profits made by a corporation engaged in the manufacture and sale of weather strip as a basis for ascertaining the profit made on certain of its product which infringed a patent, it is a proper method to take its dividends paid during the time covered by the accounting, and to add thereto the amounts it had paid out other than in the conduct of its business, where it is not shown that it paid exorbitant salaries or otherwise unfairly disposed of its earnings.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 566–576; Dec. Dig. § 318.*]

3. PATENTS (§ 318*)—SUIT FOR INFRINGEMENT—PROFITS RECOVERABLE—
PLEADING.

In a suit for infringement by the joint owners of a patent, profits and
damages which inure to the benefit of one of the complainants only as
a licensee are not recoverable where no foundation for such recovery
is laid by the pleadings, but complainants sue as joint owners only.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 318.*]

4. PATENTS (§ 319*)—SUIT FOR INFRINGEMENT—DAMAGES RECOVERABLE.

Where complainants, who were owners of a patent and manufacturers
of the patented article, granted exclusive licenses for certain territory
to use the patented article, the licensees binding themselves to buy from
them only, and defendant solicited and obtained orders from such
licensees for an infringing article, complainants are entitled to recover
as damages for the infringement, in addition to the profits made by
defendant on such sales, the difference between such profits and the
profits complainants would have made if the licensees had purchased
from them.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 577-586; Dec.
Dig. § 319.*

Accounting by infringer for profits, see notes to Brickill v. Mayor,
etc., of City of New York, 50 C. C. A. 8.]

Appeal from the Circuit Court of the United States for the Western
District of Pennsylvania.

Suit in equity by James Bredin, Charles H. Bredin, and Hugh E.
Kenny against the National Metal Weather Strip Company. De-
fendant appeals from a final decree (182 Fed. 654) awarding profits
and damages. Decree modified.

Charles M. Clarke (W. A. Griffith, of counsel), for appellant.
L. S. Bacon (Bacon & Milans, of counsel), for appellees.

Before BUFFINGTON and LANNING, Circuit Judges, and
YOUNG, District Judge.

LANNING, Circuit Judge. By their bill of complaint filed in this
case James Bredin, Charles H. Bredin, and Hugh E. Kenny alleged
that they were the joint owners of patent No. 424,905 for a new and
useful improvement in weather strips for windows, etc., and that the
defendant, the National Metal Weather Strip Company, was an in-
fringer of the patent. In the course of the proceedings James Bredin,
one of the complainants, died, and his personal representatives were
substituted on the record in his place. The Circuit Court adjudged
the patent to be valid and infringed, and ordered an injunction and
an accounting. See Opinion in Bredin v. National Metal Weather
Strip Company (C. C.) 147 Fed. 741. The decree of that court was
affirmed by this court. See 157 Fed. 1003, 85 C. C. A. 281. The
case then went to a master for an accounting for profits and damages.
The master, having taken the proofs offered, filed his report denying
to the complainants any profits and awarding only nominal damages.
Exceptions were filed to the report, and the Circuit Court sustained
several of the exceptions, and by its decree awarded to the complain-
ants for profits and damages the sum of $15,554.11. See 182 Fed.
654. From that decree the defendant has again appealed to this court.

In the amount awarded to the complainants is the sum of $9,082.58, being for manufacturer's profits on 908,258 feet of weather strip at a cent per foot. We are clear that the complainants are entitled to recover from the defendant what are termed "manufacturer's profits"; that is, profits which the defendant company made in the manufacture and sale of weather strips embodying the complainants' patent. It is conclusively proven, however, that the strips manufactured by the defendant included something more than what was covered by the complainants' patent. In Crosby Valve Co. v. Safty Valve Co., 141 U. S. 452, 12 Sup. Ct. 53 (35 L. Ed. 809), the complainant was allowed the whole of defendant's profits. The court said:

"The entire commercial value of the valves made and sold by the defendant was due to the improvement covered by the patent of 1866, and that the complainant's valves of commerce, all of them, contain the improvements covered by the patent of 1866."

In Wales v. Waterbury Mfg. Co., 101 Fed. 126, 41 C. C. A. 250, it was also held that, where the article sold by the defendant would have been unsalable except for the fact that it embodied the complainant's patent, the complainant was entitled to all the defendant's profits. The same rule was applied in Orr & Lockett Hardware Co. v. Murray, 163 Fed. 54, 89 C. C. A. 492. These cases follow the rule stated by Justice Bradley in Elizabeth v. Pavement Company, 97 U. S. 126, 139, 24 L. Ed. 1000, that, when the entire profit of a business results from the use of the patented invention, the patentee will be entitled to recover the entire profits if he elects that remedy.

[1] In the present case, however, there is no difficulty in distinguishing, with reasonable certainty, between the proportion of the defendant's profits derived from the use of the complainants' patent and the proportion not so derived. The weather strips manufactured by the defendant consisted of three members—the frame strip, the sash strip, and the meeting rail strip. The complainants' patent covered only the frame strip. The defendant's profit on these strips was found by the master, and assumed by the court, to have been one cent per foot for 908,258 feet, or $9,082.58. That amount is excessive. According to the uncontradicted evidence, the defendant's total profit on the three kinds of strips for the whole of the accounting period was $4,580.23. The master criticised the method by which that sum was ascertained, but it was unobjectionable.

[2] The portion of the profit paid out in dividends during the accounting period and the sums paid for legal and expert services in the litigation over the patent were added together, and from the sum was deducted the deficit existing at the end of the accounting period. Assuming that the defendant company paid no exorbitant salaries, and that it did not in any other manner unfairly dispose of its earnings, and there is no suggestion that it did, we think the method was as fair a one as could have been adopted. Taking, then, $4,580.23 to be the profit made by the defendant in the manufacture and sale of the three kinds of weather strips, it is necessary, in the next place, to ascertain what proportion of that sum should be paid to the complainants. The proof is that the profit on the sash strip is slightly more than on

the frame strip. The evidence is silent as to the profit on the meeting rail strip, but the amount manufactured of that strip was comparatively small. Of the total profit of $4,580.23, the sum of $2,250 will be a liberal allowance to the complainants for the profit on the frame strip, which was the only element covered by their patent.

[3] Another item entering into the total amount of the decree now objected to is the defendant's profit on installations of weather strips in what is called the Pittsburgh district. This profit was $1,213.91. That this part of the defendant's profits does not belong to the complainants as joint owners of the patent is conceded. The argument is that it belongs to the executors of James Bredin, who was the complainants' licensee for the Pittsburgh district. The claim for profits and damages made by the bill of complaint was solely that of the three complainants as joint owners of the patent in suit. James Bredin was one of those owners, but no claim by him as a licensee was made in the bill, and there was no prayer for relief in his behalf as licensee. No ground was laid in the bill for such a recovery, and we agree with the master that upon elementary principles of pleading the executors cannot recover as representatives of the licensee in this suit. We think the principle applied by this court in Brookfield v. Novelty Glass Manufacturing Company, 170 Fed. 960, 96 C. C. A. 652, should be applied here. In that case it was said:

"So far as appears, the bill proceeds in the interest and for the benefit of the owner of the patent alone, and it is not at this stage to be transformed into something else. It is only where the licensee, exclusive or nonexclusive, is in fact, in whole or in part, the beneficial party, that anything can be claimed by way of damages on his account. And it should be made clear in some way that recovery is sought on the strength of it, if that is to be the case."

Even if James Bredin's claim as licensee could have been properly joined with the claim of the owners of the patent, it was not so joined, and the award to the complainants jointly of profits arising, not from the manufacture and sale of the strips, which did belong to the complainants, but from the installation of the strips, which belonged exclusively to the licensee, was to extend the decree quite beyond the scope of the pleadings. The item of $1,213.91 should therefore be rejected.

The third, fourth, and fifth items entering into the total sum awarded by the final decree are as follows:

3. Damages in excess of profits on sales to complainants' agents, 71.634 feet, at half a cent a foot, $358.17, trebled on account of the aggravated character of the infringement............ $ 1,074.51
4. Damages in excess of profits in the Pittsburgh district, on 295,065 feet, at half a cent a foot, which the complainants would otherwise have sold................................... 1,475 32
5. Damages in excess of profits at the same rate on the rest of the weather strips sold by the respondent through the entire field ..................................................... 2,707 79

[4] The master thought the evidence on the subject of damages was so uncertain that nominal damages only could be awarded. The Circuit Court thought otherwise. We agree with the court as to the

third item. That item of 71,634 feet of strip was sold by defendant to one of the complainants' agents who was under contract to purchase from the complainants. The proofs show that the complainants' profit on the strips manufactured and sold by them was 1½ cents per foot. It is fair to assume that this agent would have purchased the 71,634 feet from the complainants if the defendant's infringing strip had not been offered to him. The damage sustained by the complainants as to this transaction was therefore the difference between 1½ cents per foot, or $1,074.51, and a proportionate part of the above mentioned sum of $2,250, or $143.27, being $931.24. We find no evidence of such a wanton violation of the complainants' rights as justifies a trebling of these damages.

We think the fourth and fifth items should be rejected. Their allowance is based on the assumption that, except for the defendant's competition, the complainants would have done the business represented by those items. The evidence is too uncertain and speculative to be the basis of such awards. Other competitors were in the field, notably the Golden Metal Weather Strip Company, which during the defendant's accounting period sold five times as many feet of metal weather strips as did the defendant, besides others who were dealing in felt and rubber strips. How much of the business acquired by the defendant would have gone to the complainants if the defendant had kept out of the field is a matter of conjecture only. For aught we know, it would have gone to the Golden Company or to some other party or parties.

Our conclusion is that the decree should be reduced to the sum of $2,250 and $931.24, or $3,181.24. The record will be remanded to the Circuit Court with instructions to modify the decree by striking out the clause reading as follows: "And whereas on the 9th day of November, 1910, this court, upon due consideration of all the facts in the case, awarded the complainants as damages and profits ascertained and found the sum of $15,554.11"; and by changing the second paragraph thereof which now reads as follows: "The defendant herein, the National Metal Weather Strip Company, do pay to the complainants the sum of $15,554.11 with interest at 6 per cent. from March 3, 1910, and that said complainants have forthwith execution therefor," to read as follows: "The defendant herein, the National Metal Weather Strip Company, do pay to the complainants the sum of $3,181.24, with interest at 6 per centum per annum from March 3, 1910, and that said complainants have forthwith execution therefor," and that the decree as thus modified be affirmed. No costs will be allowed to either party in this court.