COLD METAL PROCESS COMPANY and The Union National Bank of Youngstown, Ohio, Trustee, Appellants,

v.

E. W. BLISS COMPANY, Appellee.

E. W. BLISS COMPANY, Appellant,

v.

COLD METAL PROCESS COMPANY and The Union National Bank of Youngstown, Ohio, Trustee, Appellees.

UNION NATIONAL BANK OF YOUNGSTOWN, OHIO, Trustee, Appellant,

v.

GREER STEEL COMPANY, Appellee.

UNION NATIONAL BANK OF YOUNGSTOWN, OHIO, Trustee, Appellant,

v.

E. W. BLISS COMPANY, Appellee.
Nos. 13994–13997.

United States Court of Appeals
Sixth Circuit.
Dec. 21, 1960.

See also 285 F.2d 244.

---

3. 5 Cir., 278 F.2d at page 770.

4. Words used by Chief Justice Warren as reported in 348 U.S. at page vii, 75 S. Ct. at page 11.

232

William H. Webb, Pittsburgh, Pa., Morton Burden, Jr., Pittsburgh, Pa., Howard F. Burns, Cleveland, Ohio, Joseph R. Robinson, Jr., John M. Webb, Webb, Mackey & Burden, Pittsburgh, Pa., Baker, Hostetler & Patterson, Cleveland,

Ohio, on brief, for Cold Metal Process Co. et al.

Charles Walker, of Fish, Richardson & Neave, New York City, for E. W. Bliss Co. et al.

James H. Tilberry, Cleveland, Ohio, Williams, Tilberry & Golrick, Cleveland, Ohio, Donald E. Degling, New York City, Fish, Richardson & Neave, New York City, on brief for E. W. Bliss Co.

Thomas J. Doran Cleveland, Ohio, Meyer, Baldwin, Doran & Young, Cleveland, Ohio, on brief for Greer Steel Co.

Before McALLISTER, Chief Judge, and MILLER and CECIL, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

These four appeals arise out of three actions brought in the District Court involving the validity and infringement of Steckel patents Nos. 1,779,195 (hereinafter referred to as 195) and 1,744,016 (hereinafter referred to as 016) for improved mills and methods for the rolling of hot and cold metal in strip or sheet form.

Patent 016 issued January 14, 1930, on an application filed June 30, 1923, by Abram P. Steckel, hereinafter referred to as Steckel, Patent 195 issued October 21, 1930, on an application filed December 9, 1929, as a division of the original Steckel application.

Steckel assigned his applications to The Cold Metal Process Company, hereinafter referred to as Cold Metal, and the patents were issued to that company. Thereafter, pending this litgation, the Steckel patents were assigned to The Union National Bank of Youngstown, Ohio, Trustee of the Leon A. Beeghley Fund, hereinafter referred to as the Trustee.

The three actions in the District Court involved Cold Metal and the Trustee, as the owners of the patents, and E. W. Bliss Company and the Greer Steel Company, as alleged infringers.

E. W. Bliss Company, hereinafter referred to as Bliss, is a Delaware corporation, engaged in the manufacture and sale of rolling mills.

Greer Steel Company, hereinafter referred to as Greer, is a West Virginia corporation and is a user of rolling mills. It purchased several mills from Bliss and one from United Engineering & Foundry Company, hereinafter referred to as United.

The actions in the District Court are as follows:

1. E. W. Bliss Company v. The Cold Metal Process Company and The Union National Bank of Youngstown, Ohio, Trustee, Equity No. 5402. (Appeal No. 13,994 by Cold Metal and No. 13,995 by Bliss.)

This action was filed by Bliss on January 20, 1936, seeking a declaratory judgment with respect to the validity and infringement of Steckel patents 016 and 195. Cold Metal filed its answer on May 20, 1939, but at that time asserted no counterclaim. In January, 1949, Cold Metal and the Trustee moved to amend the answer by adding a counterclaim charging Bliss with infringement. This motion was sustained by order of May 8, 1950. On May 26, 1950, pursuant to such order, Cold Metal and the Trustee amended the original answer by adding a counterclaim charging Bliss with infringement.

The District Court held patent 195 valid and infringed by Bliss with respect to certain mills in issue, but not infringed by certain other mills. Certain limitations were engrafted by the Court upon patent 016 and, as so limited, patent 016 was held valid but not infringed. The District Court also considered and ruled upon the measure of damages in conjunction with its ruling on validity and infringement. Judgment was entered in accordance with these rulings, which also provided that damages were to be later determined in accordance with the ruling contained in the opinion.

2. The Union National Bank of Youngstown, Ohio, Trustee, v. Greer Steel Company. Civil Action No. 24,189 (Appeal No. 13,996).

This action was filed by the Trustee in July, 1946, charging Greer with infringement of patents 016 and 195 by reason of Greer's use of rolling mills purchased from Bliss and United.

The District Judge held that the mill purchased by Greer from United infringed patent 195, but that by reason of an exclusive license granted by Cold Metal to United, Cold Metal was estopped from asserting its claim against Greer for infringement by use of the mill purchased from United. A judgment was entered dismissing the complaint against Greer.

3. The Union National Bank of Youngstown, Ohio, Trustee, v. E. W. Bliss Company. Civil Action No. 26,542 (Appeal No. 13,997).

This action was filed June 1, 1949, and charged Bliss with infringement of patents 016 and 195. This action was between the same parties and involved the same issues as were raised by the counterclaim in Equity No. 5402. This action was filed as a precautionary suit to stop the running of the Statute of Limitations against the claim of infringement, because of the delay with respect to the ruling of the Court on the Trustee's motion for leave to amend its answer by asserting its counterclaim against Bliss in Equity No. 5402.

Judgment was entered dismissing this action against Bliss.

The three actions were consolidated for hearing in the District Court and were discussed and decided in a very thorough and carefully prepared opinion of the District Judge, reported at E. W. Bliss Company v. Cold Metal Process Company, 174 F.Supp. 99.

Appeal No. 13,994 was taken by Cold Metal and the Trustee from that portion of the judgment in Equity No. 5402 which limited the claims of patent 016, the ruling that patent 016 was not infringed, and the ruling with respect to damages.

Appeal No. 13,995 was taken by Bliss from that portion of the judgment in Equity No. 5402 which held patent 195 to be valid and the ruling which gave effect to the counterclaim which it claims was erroneously permitted to be filed.

Appeal No. 13,996 was taken by the Trustee from the judgment in Civil Action No. 24,189 dismissing the complaint against Greer.

Appeal No. 13,997 was taken by the Trustee from the judgment in Civil Action No. 26,542 dismissing the complaint against Bliss.

The four appeals were consolidated and heard together by this Court.

These two Steckel patents have been involved in extensive litigation and have previously had the careful consideration of this Court. A discussion of the problems in the steel industry, to the correction of which these patents were directed, the patent office history with respect to the applications and issuance of the patents, and a description of the patents themselves are fully set out in United States v. Cold Metal Process Co., D.C.N.D.Ohio, 62 F.Supp. 127, affirmed, 6 Cir., 164 F.2d 754, certiorari denied 334 U.S. 811, 68 S.Ct. 1016, 92 L.Ed. 1742, rehearing denied 334 U.S. 835, 68 S.Ct. 1343, 92 L.Ed. 1761, and Cold Metal Process Company v. Republic Steel Corp., D.C.N.D.Ohio, 123 F.Supp. 525, affirmed, 6 Cir., 233 F.2d 828, certiorari denied 352 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86, rehearing denied 352 U.S. 955, 77 S.Ct. 323, 1 L.Ed.2d 245. See also: Cold Metal Process Co. v. McLouth Steel Corp., 6 Cir., 170 F.2d 369; Cold Metal Process Co. v. United Engineering & Foundry Co., D.C.W.D.Pa., 3 F.Supp. 120, appeal dismissed, 3 Cir., 68 F.2d 564, certiorari denied 291 U.S. 675, 54 S.Ct. 530, 78 L.Ed. 1064; Cold Metal Process Co. v. American Sheet & Tin Plate Co., D.C.N.J., 22 F.Supp. 75, affirmed in part and reversed in part Cold Metal Process Co. v. Carnegie-Illinois Steel Corp., 3 Cir., 108 F.2d 322, opinion withdrawn and complaint dismissed as moot, 3 Cir., 115 F.2d 33; Cold Metal Process Co. v. Commissioner, 6 Cir., 247 F.2d 864. In view of what has been said in the opinions in the foregoing cases, to which reference is made, and also in the opinion of the District Court in this case, it

is unnecessary to restate the patent office history of the Steckel application and divisional application upon which the two patents issued (see 62 F.Supp. 127) or to describe in detail the two patents involved. For the purposes of this opinion and the rulings herein made, the following description and discussion of the patents is sufficient.

## Patent 195.

This patent relates to the rolling of thin sheet-like metal strips in long lengths. It provides a mill which may be operated at high speeds and permits of rolling metal strips of practically unlimited length. It applies to both the hot and cold rolling of the metal. It is especially useful in the rolling of metal of great thinness relative to its width. Steckel stated in the application,

"I provide working rolls having backing rolls of larger diameter and anti-friction mounting for said backing rolls of a character adapted to withstand the rolling pressures encountered and the high speeds which are employed. In a preferred form of the invention the backing rolls are provided with necks which carry the anti-friction bearings, these necks being of sufficient size to withstand the rolling pressure, and the diameter of the backing roll body relative to the diameter of the working roll being of exaggerated size so as to permit of using anti-friction bearings of sufficient size for the conditions encountered. It is important that the bearings be of adequate size and of proper character, and in the form of the invention herein particularly described, roller bearings employing spaced-apart rollers are used."

Basically, the claims define a 4-high mill with antifriction bearings on the backing rolls. Power is supplied to the working rolls and not through tension on the delivered strip.

This patent was held valid by the District Court for the Northern District of Ohio in Cold Metal Process Co. v. Republic Steel Corp, supra, D.C., 123 F. Supp. 525, which ruling was affirmed by this Court in Cold Metal Process Co. v. Republic Steel Corp., supra, 6 Cir., 233 F.2d 828, certiorari denied 352 U.S. 891, 77 S.Ct. 128, 1 L.Ed.2d 86, rehearing denied 352 U.S. 955, 77 S.Ct. 323, 1 L.Ed. 2d 245.

The District Judge discussed the patent and reviewed the prior art at length in his opinion in this case. He stated that stripping the claims of the verbiage and looking to their essentials they disclosed a 4-high mill with roller bearings on the necks of the backing rolls, that the use of the roller bearing itself was old in the rolling mill art, that the road-block in the path of the development of the roller bearings was a mechanical one, and that he found no invention in Steckel being the first person to get an adequate roller bearing and do what was predicted, advocated, taught, and attempted for many years prior thereto, but which the prior workers had been unable to achieve with a high degree of precision because of mechanical drawbacks. In his opinion the patented mill was the same basic 4-high mill as had been known in the art for years, the only difference being that it had an improved bearing on the necks of the backing rolls, and that the thing that made possible the use of roller bearings was the evolution of the bearing itself. He was also of the opinion that roller bearings had in fact been used on the Bridgeport 4-high cluster mills, which prior public use was relied upon as creating a statutory bar to the validity of the patent.

However, the District Judge was also of the opinion that the issue of validity was properly before this Court in the earlier Republic Steel case, in which the evidence was substantially the same as in the present case and in which case both the District Court and this Court, after a full discussion of the same issues, were of the opinion that invention existed and that the patent was not anticipated by the prior art. Notwithstanding his individual opinion in the case, he was of the view that the case was controlled

by the ruling in the Republic Steel case and, accordingly, entered a judgment sustaining the validity of the patent.

■ Opponents of the patent contend that the ruling on validity in the Republic Steel case was in effect *obiter dictum*, in that the complaint of the Cold Metal Process Company against Republic Steel was dismissed, the Court being of the opinion that as to all of the accused mills Republic Steel was immune from any claim of infringement by reason of a license agreement of June 20, 1927, between Cold Metal and United, from which Republic Steel purchased all of the accused mills.

We do not give the ruling in the Republic Steel case that effect. The Court could have decided the case on the ground of license immunity with the statement that in view of such ruling it was unnecessary to rule on the validity of the patent. It did not do so. On the contrary, it accepted the issue of validity as being involved in the case, discussed it at length, and decided it. We consider it a ruling on the validity of the patent and not *obiter dictum*. Railroad Companies v. Schutte, 103 U.S. 118, 143, 26 L. Ed. 327; Union Pacific R. Co. v. Mason City & Ft. D. R. Co., 199 U.S. 160, 166, 26 S.Ct. 19, 50 L.Ed. 134; Joyce v. Wyant, 6 Cir., 202 F.2d 863, 865.

■ Opponents of the patent also contend that since they were not parties in the Republic Steel case, the ruling is not *res judicata* as to them, and that if this Court is of the opinion that the ruling was erroneous, as was the District Judge, it is not required that it be followed by the same court at a later time, although the District Judge was required to follow the ruling of the Court of Appeals. Compare: Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Brown v. Board of Education, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873.

In the Republic Steel case this Court had before it rulings in cases in the Third Circuit holding the patent valid. Although it was recognized that they were not controlling upon the ruling of this Court, we took occasion to point out that such prior decisions holding the patent valid, even though from a different circuit, should be followed unless the Court was convinced of "a very palpable error in law or fact," citing in support of such a principle the prior ruling of this Court in Cincinnati Butchers' Supply Co. v. Walker Bin Co., 6 Cir., 230 F. 453, 454. In the present case in which we have a prior ruling from our own Court, the rule of *stare decisis* is applicable. Discussing the rule in New York Life Ins. Co. v. Ross, 6 Cir., 30 F.2d 80, 83, certiorari denied 279 U.S. 852, 49 S.Ct. 348, 73 L.Ed. 995, we said, "If this doctrine means, as was said in The Madrid, C.C., 40 F. 677, 679, 'that when a point has been once settled by judicial decision, it forms a precedent for the guidance of courts in similar cases,' precedents which cannot be distinguished should be followed until modified or overruled, and the interest of uniformity, certainty and stability in the law thus promoted. Certainty of a rule is often of equal importance with theoretical accuracy." See also: Penfield v. C. & A. Potts & Co., 6 Cir., 126 F. 475, 478, which involved the validity of a patent; Grand Rapids & I. R. Co. v. Blanchard, 6 Cir., 38 F.2d 470, 471, and Polisnik v. United States, 104 U.S.App.D.C. 136, 259 F.2d 951, note 3, at page 952.

In the present case, not only do we have the ruling in the Republic Steel case from our own circuit, but the validity of the patent has also been upheld by the District Court for the Western District of Pennsylvania in Cold Metal Process Co. v. United Engineering & Foundry Co., supra, D.C., 3 F.Supp. 120, appeal dismissed, 3 Cir., 68 F.2d 564, certiorari denied 291 U.S. 675, 54 S.Ct. 530, 78 L.Ed. 1064. In Cold Metal Process Co. v. American Sheet & Tin Plate Co., supra, D.C.N.J., 22 F.Supp. 75, the District Court held patent 195 invalid for want of invention, but this ruling was reversed and the patent held valid by the Court of Appeals in Cold Metal Process Co. v. Carnegie-Illinois Steel Corp., supra, 3 Cir., 108 F.2d 322. The opinion in this

case was later withdrawn and the complaint dismissed as moot by reason of a settlement between the parties. Cold Metal Process Co. v. Carnegie-Illinois Steel Corp., supra, 3 Cir., 115 F.2d 33.

■ We are of the opinion that the prior ruling of this Court in the Republic Steel case should be adhered to and, accordingly, the ruling of the District Judge that patent 195 is valid is affirmed.

### Patent 016.

■ This invention relates to cold rolling metal into thin strip form. It also relates to a new cold process for making economically thin sheet metal hitherto made by hot rolling in packs, notably commercial tin plate. It also contemplates a new and improved product resulting from the practice of the new method herein disclosed. It applies to any backed up mill (3-high, 4-high or cluster) embodying its features. It discloses backing rolls of large diameter with an antifriction mounting and relatively small reducing rolls, with the rolls being driven largely, principally or substantially by tension on the delivered strip.

Steckel stated in his application,

"In cold rolling as heretofore practiced it has been generally considered necessary to anneal the material after it has been reduced to half its original thickness, and as a consequence great reductions by cold rolling have always required a large number of intermediate anneals. In order to prevent such hardening of the strip with the accompanying annealing, I use a roll, or preferably a pair of rolls, of comparatively small diameter. These rolls do not have the necessary strength to be self supporting, and are therefore provided with backing rolls of large diameter and of the necessary strength to withstand the rolling pressure. The backing rolls have an anti-friction mounting. This permits the rolls to be driven principally or entirely by the tension on the delivered strip, such tension

being exerted by the winding reel or by a subsequent pair of rolls. The delivered strip may, therefore, be maintained under a constant and automatically regulated tension, which is highly desirable in cold rolling as it insures straightness of the product. This tension should be substantially constant to insure uniformity of gauge. The anti-friction mounting also permits the strip to be rolled at high speed, it saves so much power that the usual mill drive may be radically simplified or even dispensed with."

Operation of the mill wholly or in part by tension on the strip distinguishes it from patent 195.

The claims involved refer to a "relatively small reducing roll" with the rolls being "driven principally" by tension on the delivered strip, or, as stated in claims 11 and 12, "a substantial part of the power required" being supplied by tension on the delivered strip. Claims 24, 25 and 26 state that the rolls are "driven largely" by tension on the delivered strip.

This patent was also involved in the Republic Steel case and was held valid by both the District Court and by this Court on appeal. It was also held valid by the District Court for New Jersey in Cold Metal Process Co. v. American Sheet & Tin Plate Co., supra, 22 F.Supp. 75, 79, which ruling was affirmed by the Court of Appeals for the Third Circuit in the opinion which was subsequently withdrawn following a settlement between the parties, hereinabove referred to.

In the present cases Bliss and Greer contend (1) that the words "relatively small" as applied to the size of the working rolls should be construed as meaning a small roll *per se* rather than small rolls in relation to the size of the backing up rolls, and (2) that the words "driven principally," "driven largely" and "substantial part," as applied to the amount of power provided by tension should be construed as meaning not less than 49% of the total power.

The District Judge was of the opinion that tension on the strip performed a new function, providing the principal source of motive power in a mill in which the work rolls were also powered, and that although it was a combination of old elements, they performed new functions and produced a new and different result, which satisfied the requirements for a valid combination patent.

However, he pointed out in his opinion that during the entire prosecution of the patents the position was taken that small work rolls themselves, not work rolls in relation to their backing rolls, was the important feature, and that the proper size of the work rolls was to be found in the specifications, which limited the size of the work roll to six inches. He was also of the opinion that in order to have the ability to bite into the strip over such a range of hardness that reductions may be taken down to tin plate gauge without intermediate annealing, it was necessary to have a work roll small *per se.*

With respect to the amount of tension provided for driving the rolls, the District Judge stated that any mill employing a tension reel for winding and keeping the strip taut is inevitably driven to some extent by the tension on the strip. He cited several prior patents teaching the use of varying degrees of tension on the strip in conjunction with rolling mills, none of which, however, taught the use of tension on the strip as the main source of motive power for the mill. He reasoned, therefore, that that was the only area open for Steckel to claim as his invention, and that in order for the claims to be valid they must be restricted to operation in the range not less than 49% of the total power.

He ruled that considering patent 016 as a patent on a 4-high rolling mill with roller bearings on the backing rolls having work rolls of six inches in diameter or less, and employing tension on the strip of 49% or more of the total power of the system, it was a valid combination patent.

Cold Metal and the Trustee contend that with respect to the ruling on "relatively small" working rolls the District Judge failed to give effect to Steckel's teaching as shown by his specification; that the specification of a work roll with a diameter of less than six inches was for "ordinary work" only, which at that time was not more than 20 inches in width; that the ruling completely overlooks the relationship between diameter and length, which is of importance on the question of whether the rolls are self supporting or will withstand the spreading force due to rolling; that there is nothing in the assertions to the Patent Office which could justify reading the six inches limitation into the claim, but, on the contrary, the file history shows that Steckel was refusing during the prosecution of the case to place a definite or numerical limitation on the size of the work rolls because of the wide variations encountered in conducting rolling operations. Some of these variables are metal thickness, metal width, reductions per pass, ultimate thinness, prior rolling history of the metal and composition of the metal, causing Steckel to be unwilling to place in his claims a numerical limitation like that which the District Judge read therein.

Cold Metal and the Trustee contend that with respect to the ruling on the amount of tension involved this ruling of the District Judge considered only the claims that state that a "substantial" part of the power for driving the mill is supplied by tension, and that other claims specify that the mill is to be driven "largely" by tension, while still other claims specify that the "principal" driving power is furnished by tension; that these different terms obviously have different meanings in that it is well settled that one claim of a patent will not be construed in such a way as to make it substantially identical with another claim; and that such a difference in meaning was recognized and approved by the District Judge in the Republic Steel case, which was affirmed on appeal by this Court.

In the Republic Steel case the District Judge held that although tension in varying degrees had been used in prior art mills, it was so used only for the purpose of winding up the strip and guiding it through the rolls; in no case had it ever been used in a combination such as Steckel disclosed, where it was to play a material role in driving a mill in the cold rolling of high ratio metal strip. Therefore, in construing "substantially" he said that it must be assumed that Steckel intended that forward tension would be used in quantities at least in excess of those needed merely to fulfill the prior art function. In saying that forward tension would constitute the "principal" driving power he said Steckel indicated that forward tension would contribute more to the driving of the mill than the power applied to the work rolls. In stating that the mill would be "largely" driven by forward tension, he reasoned that it must be assumed that he intended to devote a value, separate and independent of the values represented by "substantially" and "principally," and, accordingly, he construed "largely" to mean that forward tension must make more than just a material contribution, but it need not be greater than 50%, as required by "principally," and that it meant a value intermediate between "substantially" and "principally."

■ What we have previously said about *stare decisis* in our discussion of patent 195 is equally applicable to patent 016. The construction of a patent is a question of law for the Court. Coupe v. Royer, 155 U.S. 565, 579–580, 15 S.Ct. 199, 39 L.Ed. 263; Motor Wheel Corporation v. Rubsam Corporation, 6 Cir., 92 F.2d 129, 131. As we said in the Republic Steel case, "The prior decisions holding these patents valid should be followed unless the court is convinced of 'a very palpable error in law or fact,' * * *." 233 F.2d at page 837. Although the question is a close one, we are not convinced that there was a very palpable error in our previous rulings in the Republic Steel case and, accordingly, are of the opinion that the District Judge was in error in placing upon patent 016 the limitations contained in his ruling.

### Statute of Limitations.

■ In Equity No. 5402, filed by Bliss on January 20, 1936, Bliss sought a declaratory judgment with respect to the validity and infringement of patents 016 and 195. In its answer filed on May 20, 1939, Cold Metal did not assert a counterclaim. However, on May 26, 1950, Cold Metal and the Trustee, pursuant to permission granted by the Court, filed a counterclaim seeking damages against Bliss for infringement. Bliss claims that at that time the claims for infringement were barred by the six-year Statute of Limitations, Act of Aug. 1, 1946, c. 726, § 1, 60 Stat. 778, in that all of the infringing mills were sold by Bliss more than six years prior to June 1, 1949, on which date the Trustee filed Civil Action No. 26,542 against Bliss, which was the only action by the Trustee which tolled the Statute of Limitations. Bliss, accordingly, filed a motion to dismiss the counterclaim.

The District Judge overruled the motion. In his opinion, reported at E. W. Bliss Company v. Cold Metal Process Co., D.C.N.D.Ohio, 156 F.Supp. 63, he pointed out that the complaint in the declaratory judgment action prayed that the patents be declared not only invalid but also not infringed, that the counterclaim sought a ruling on the same issues, namely, a determination of validity and infringement, and that under the provisions of Section 2 of the Declaratory Judgment Act in force at the time, Sec. 400, Title 28 U.S.C. and Rule 15(c), Rules of Civil Procedure, 28 U.S.C., the filing of the counterclaim related back to the date when the complaint was filed. These views are well developed in the opinion, together with supporting authorities therefor. For the reasons given by the District Judge, the ruling is affirmed.

### Infringement.

The District Judge held that certain mills manufactured and sold by Bliss and a mill operated by Greer did not infringe

either patent 195 or 016 because these mills had "Morgoil" bearings on the necks of the backing rolls. Cold Metal and the Trustee ask us to reverse this ruling. On this particular phase of the case we believe it is sufficient to point out that the question of Morgoil bearings was fully discussed by the District Judge in the Republic Steel case and also by this Court on the appeal in that case, both of which courts held that mills equipped with Morgoil bearings are not covered by the Steckel patents. The principle of *stare decisis* is applicable to Cold Metal and the Trustee as well as to the alleged infringers. Although the District Judge gave it independent consideration and reached the same conclusions, the reasons for which are challenged by Cold Metal and the Trustee, we are of the opinion that the ruling is controlled by the ruling in the Republic Steel case and requires no further discussion at this time. The ruling on this phase of the case is affirmed.

With respect to certain mills which were charged to infringe patent 195, the District Judge found that by reason of the fact that the backing rolls were mounted with roller bearings these mills infringed patent 195. The appeal of Bliss does not challenge these findings, which are, accordingly, accepted.

With respect to the infringement of patent 016 the District Judge ruled that the mills with working rolls over six inches in diameter did not infringe the patent. With respect to other mills with working rolls of six inches or under, he ruled that patent 016 was infringed only by those mills which were so powered that in the course of normal operations would have 49% or more of the total power supplied by tension on the strip, and that none of these mills was manufactured by Bliss so as to operate in a normal manner which would infringe patent 016.

This ruling was consistent with the limitations placed upon the patent by the District Judge. Since we have held that patent 016 should not be so limited, the ruling is based upon an incorrect premise and must be set aside. Upon remand of the case the question of infringement of patent 016 will be reconsidered by the District Judge in the light of the construction placed upon the patent by this opinion.

### Damages.

With respect to the measure of damages for infringement of patent 195, the District Judge held that Cold Metal and the Trustee were limited to the stipulated royalty provided by the contract between Cold Metal and United, dated June 20, 1927, that they were only entitled to collect one royalty per mill, and that such royalty was properly collected from Bliss rather than from Greer. The provisions of that contract and the circumstances under which it was executed are set out in the opinions of the District Court and this Court in the Republic Steel case and will be found at 123 F.Supp. at pages 545–547 and 233 F.2d at pages 843–844. They need not be restated here.

Under the contract Cold Metal granted to United "a license to make, use and sell rolling mills under such claim or claims, which license shall be exclusive to United for 4-high hot mills and for 4-high cold mills, in which the major portion of the power required by a roll stand is applied to the rolls directly and not through tension exerted on the material for pulling it through the rolls; Cold Metal, however, reserving the right to make or have made for its own use and to use in its own plant or plants such hot and cold mills, * * *."

This license agreement has also been the subject of much litigation, in which its validity has been upheld and the amount of the royalty fixed. Cold Metal Process Co. v. United Engineering & Foundry Co., supra, D.C., 3 F.Supp. 120, 130–131, appeal dismissed, 3 Cir., 68 F. 2d 564, certiorari denied 291 U.S. 675, 54 S.Ct. 530, 78 L.Ed. 1064; Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 107 F.2d 27; Cold Metal Process Co. v. United Engineering & Foundry Co., 3 Cir., 190 F.2d 217; Cold

Metal Process Co. v. United Engineering & Foundry Co., D.C., 132 F.Supp. 597, affirmed, 3 Cir., 235 F.2d 224, to which reference is made.

The District Judge reasoned that under the contract, in the field of cold mills where the major power was applied directly to the rolls, United's license was exclusive, with Cold Metal having only a shop right with respect to such mills. As to mills where tension on the strip supplied the major or principal source of power, Cold Metal retained the sole right to make, use and sell such mills, and that since patent 195 related only to the basic mill structure itself and was not concerned with tensions, United had the sole right to make, use and sell to the public the basic mill structure itself, which was all patent 195 covered. It followed that the only interest which Cold Metal had in this basic mill stand was the right to collect royalties for its manufacture, use or sale. He further reasoned that in case of infringement in this field by Bliss and Greer, any damage in excess of the royalty due from United was damage to United, who, under the license, had the exclusive right to make, use and sell the mills, and if Cold Metal was permited to collect from Bliss and Greer in excess of the stipulated royalty per mill, it could be held to account for United for such sum.

Cold Metal contends, however, that an action for infringement could not be maintained by a licensee, and since it had not granted licenses to Bliss and Greer, with a stipulated royalty therein provided, they were infringers whom the owner of the patent should be entitled to sue for whatever the actual damages are proven to be. Under such circumstances, they contend, any later adjustment between Cold Metal and United, which would give to United the damages collected by Cold Metal in excess of the stipulated royalty to be paid by it, was a matter with which the Court in this action was not concerned and which should be left to the parties for later disposition between them.

The District Judge answered this contention by pointing out that if United took no action to recover the excess from Cold Metal, Cold Metal would be unjustly enriched. If United did sue Cold Metal would be unjustly enriched. If United did sue Cold Metal to recover such excess, it would mean another law suit in this seemingly interminable litigation, and also give United an opportunity to collect damages for such infringement, although a direct claim for damages against Bliss and Greer was barred by the Statute of Limitations. Accordingly, he limited damages to one royalty per mill. See: Marks Music Corp. v. Jerry Vogel Music Co., 2 Cir., 140 F.2d 268.

We concur in the reasoning and the ruling of the District Judge. The grant of an exclusive license to United to "make, use and sell" the mills in question limited Cold Metal's income from patent 195 to the stipulated royalty for each mill. The ruling complies with the fundamental purpose of that contract, even though some of the mills were manufactured by Bliss instead of by United. To allow Cold Metal to recover more than the royalty for each mill would place it in a better position by reason of the infringement than it would have been in if there had been no infringement. Any claim for damages against Bliss and Greer equitably runs in favor of United rather than in favor of Cold Metal as the legal owner of the patent, because of the exclusive license given to United to "make, use and sell" the mills. This right can be enforced by such an exclusive licensee. Independent Wireless Tel. Co. v. Radio Corp., 269 U.S. 459, 469, 46 S.Ct. 166, 70 L.Ed. 357; Bredin v. Solmson, C.C.Md., 145 F. 944, 945. See also: National Metal Weather Strip Co. v. Bredin, 3 Cir., 186 F. 490, 493; General Motors Corporation v. Blackmore, 6 Cir., 53 F.2d 725, 727–728. It is true that United did not elect to enforce its rights against Bliss and Greer, and now is barred by the Statute of Limitations from doing so. But, we do not see how that confers any greater right on Cold

Metal than it would have had if United had taken such action.

Cold Metal complains of the action of the District Judge in ruling on the measure of damages when the amount of damages was being reserved for later consideration and no evidence was received on the issue. The ruling on the measure of damages involved a question of law arising out of undisputed facts. The judgment entered left for future determination the amount of damages. On the legal question involved, Cold Metal has had full opportunity to be heard. We fail to see how Cold Metal has been prejudiced in the matter or would be in any better position by having the ruling set aside at the present time for the reason relied upon, and have the ruling made by the District Judge at a later time and then reviewed by this Court in another appeal. On the contrary, we think the ruling looks to a better and more expeditious handling of this litigation when the question of the amount of damages is hereafter considered by the District Court. We find no prejudicial error in the ruling of the District Judge.

### Liability of Greer.

■ One of the mills purchased by Greer, and which was found by the District Judge to infringe patent 195 was purchased by Greer from United, rather than from Bliss, on November 9, 1928. United's proposal for the sale stated that the mill was covered by patent No. 1,-654,235, hereinafter referred to as patent 235, owned by United, and that the purchase of the mill included license for its use under said patent. This patent was the patent issued under the Biggert and Johnson application, which was owned by United at the time, but which later through interference proceedings in the Patent Office became patent 195 issued to Cold Metal on October 21, 1930. (See opinions in the Republic Steel case for history of these proceedings.) Accordingly, at the time of the sale patent 195 had not issued.

It is clear from the ruling in the Republic Steel case that by reason of the contract of June 20, 1927, by which Cold Metal granted United an exclusive license, a purchaser of a mill from United after patent 195 issued to Cold Metal, would be immune from liability for infringement of patent 195. Cold Metal contends, however, that since the sale was prior to the issuance of patent 195 and prior to the effective date of the exclusive license to United, the purported license by United to Greer under patent 235 did not provide any immunity from infringement of patent 195 when it later issued.

There would be merit in this contention except for the particular circumstances leading up to the issuance of patents 235 and 195, hereinabove referred to. Giving consideration to those proceedings, the District Judge ruled that Cold Metal having made it possible by the agreement of June 20, 1927, and the course of procedure followed under it, it would not seem equitable and just for Cold Metal to compel Greer to pay twice for its license. He held that on principles of equity Cold Metal was estopped from asserting its claim against Greer for infringement by the use of the mill purchased from United. We concur in the ruling.

■ With respect to other mills bought by Greer from Bliss, for the use of which the Trustee sought damages against Greer for infringement of patent 195, the District Judge, having held that the Trustee was only entitled to collect one royalty per mill, also ruled that this royalty was properly collected from Bliss rather than from Greer. He, accordingly, absolved Greer from liability and entered a judgment in the action against Greer dismissing the complaint.

We think this was error. The ruling does not give consideration to the difference between *liability* and *recovery*. Although recovery is properly limited to the amount of the royalty for each mill, liability, under which recovery can be made, is not limited to Bliss alone. Bliss infringed by making and selling the mill. Greer infringed by using it. There was a cause of action against each of them,

although the total *recovery* under the separate judgments was limited. If Bliss does not pay the full damages provided by the judgment against it, the Trustee should have the right to collect the unpaid portion of the damages against Greer, the other infringer. Birdsell v. Shaliol, 112 U.S. 485, 5 S.Ct. 244, 28 L.Ed. 768; De Laski & Thropp Circular Woven Tire Co. v. Empire Rubber & Tire Co., D.C.N.J., 239 F. 139, 143; Kryptok Co. v. Stead Lens Co., 8 Cir., 190 F. 767, 39 L.R.A.,N.S., 1. Unless a judgment is entered against Greer, the Trustee will lose this right. Whether the judgment will have to be paid by Greer in whole or in part depends upon what collection is made from Bliss.

The claim against Greer for using an infringing mill manufactured by Bliss is very different from a claim against Greer for using a mill manufactured by United. United's license gave it the right to "make, use and sell" the patented mill, which included the right of a purchaser from it to use the mill. Bliss had no right to make, use or sell the mill. It was an infringer instead of a licensee, and could pass no right to use the mill to a purchaser from it. Accordingly, Greer infringed as well as Bliss.

### Appeal No. 13,997.

The Trustee filed Civil Action No. 26,-542 against Bliss as a precautionary action to toll the Statute of Limitations with respect to its infringement claims against Bliss, in the event the District Judge should overrule its pending motion to file its counterclaim against Bliss in Equity No. 5402, or it should be finally held that the District Judge was in error in permitting the counterclaim to be filed. If he was not permitted to prosecute the infringement claims by his counterclaim in Equity No. 5402, he would still be in a position to prosecute them in this later action, to the extent that they were not already barred by the Statute of Limitations when the action was filed.

The District Judge, after ruling that the counterclaim was correctly filed, properly dismissed Civil Action No. 26,-542. Appeal No. 13,997 was taken by the Trustee from this judgment in order to still maintain his right in the event the ruling permitting the counterclaim to be filed was reversed in Appeal No. 13,-995. Since the ruling of the District Judge permitting the counterclaim to be filed is being affirmed by this Court in Appeal No. 13,995, the ruling of the District Judge dismissing the independent action, Civil Action No. 26,542, is also affirmed.

### Costs.

■ Appeals Nos. 13,994, 13,996 and 13,997 came to us on a consolidated appendix. In them, Cold Metal and the Trustee were successful in reversing the ruling on the limited validity of patent 016 and in reversing the final judgment in the action against Greer, Appeal No. 13,996. Bliss and Greer were successful in the ruling on the Morgoil bearings, limitation of the amount of damages, the immunity of Greer from infringement through the use of the mill purchased from United, and the dismissal of the independent action filed by the Trustee against Bliss, Appeal No. 13,997. We are of the opinion that the costs should be evenly divided between Cold Metal and the Trustee on the one side, and Bliss and Greer on the other. If the parties on either side are unable to agree as to the division between them, application may be made to this Court to settle the issue.

Appeal No. 13,995 comes to us on a separate appendix. In it Bliss was unsuccessful on the issue of the validity of patent 195, the filing of the counterclaim, and the Statute of Limitations. Cold Metal and the Trustee are entitled to their costs in this Court in this appeal. Since the proceedings in the District Court were a part of Equity No. 5402, out of which Appeal No. 13,994 also arose, the costs in the District Court will be divided evenly between the opposing parties.

In Appeals No. 13,994 and No. 13,995, the judgment of the District Court in

Equity No. 5402 is affirmed in part and reversed in part in accordance with the rulings stated in this opinion and the case remanded to the District Court for further proceedings consistent with the views expressed herein.

In Appeal No. 13,996 the judgment of the District Court in Civil Action No. 24,189 is reversed and the case remanded to the District Court for further proceedings consistent with the views expressed herein.

In Appeal No. 13,997 the judgment of the District Court in Civil Action No. 26,542 is affirmed.

See also 285 F.2d 231.