**Louis POLISNIK, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14089.**

United States Court of Appeals District of Columbia Circuit.

Argued May 23, 1958.

Decided Sept. 8, 1958.

Mr. Bruce G. Sundlun, Washington, D. C. (appointed by this court) for appel-

lant. Mr. Gilbert Hahn, Jr., Washington, D. C., also entered an appearance for appellant.

Mr. John D. Lane, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty., Carl W. Belcher and Victor W. Caputy, Asst. U. S. Attys., were on the brief, for appellee.

Before FAHY and WASHINGTON, Circuit Judges, and LARAMORE, Judge, United States Court of Claims.*

FAHY, Circuit Judge.

Appellant was found guilty on eight counts of forging and uttering four checks in the month of September and November 1953. He appeals from the ensuing judgment.

■ The principal problem, as it seems to us, grows out of the defense of insanity. In support of this defense testimony was given by Dr. Samuel Leopold, a psychiatrist who was Mental Director at the Municipal Court of Philadelphia and Director of its Neuropsychiatric Department. He had examined appellant in 1954 and found he was "in a disorganized mental state of an old schizophrenic." In addition, there were offered in evidence numerous records of institutions to which appellant had been admitted at various times. These institutions were (1) Bellevue City Hospital, New York, New York (1941), the records of which indicated appellant had "psychotic tendencies"; (2) Mattawan State Hospital, Beacon, New York, a hospital for the criminally insane (February 1942–September 1944), the records of which indicated appellant had "psychosis with a psychopathic personality"; (3) the Medical Center for Federal Prisoners, Springfield, Missouri (1936–1938), the records of which indicated he had a "schizophrenia, paranoid type, improved"; (4) the Veterans Administration Hospital, Bronx, New York (1946–47), the records of which indicated he had a "psychopathic personality with a paranoid type"; (5) Veterans Administration examination of 1949; and (6) Veterans Administration rating of 1933 and 1942, the latter of which indicated that he had a "psychopathic personality paranoid type."[1] As we have seen these records indicated generally that appellant was "schizophrenic-paranoid type." [2] Insofar as they were diagnostic of appellant's mental condition, however, the records were excluded from evidence, the District Court relying upon New York Life Ins. Co. v. Taylor, 79 U.S.App.D.C. 66, 147 F.2d 297, the rule in which case has been reaffirmed by this court en banc in Lyles v. United States, 103 U.S.App. D.C. 22, 254 F.2d 725, certiorari denied 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067. We feel bound by these decisions to sustain the exclusionary rulings of the District Court.[3]

■ In the face of appellant's history, thus revealed to the trial court, we think the court was under the duty of scrupu-

---

* Sitting by designation pursuant to the provision of Sec. 291(a), Title 28 U.S. Code.

1. Appellant has been rated permanently and totally disabled by the Veterans Administration. In addition to his mental difficulties, he has had physical problems, including hypertension and heart disease.

2. Documents from the United States District Court for the Eastern District of Pennsylvania, dated October 13, 1954, indicating that appellant was then found incompetent to stand trial, were excluded.

3. If free to do so, however, this division of the court would reverse, being of the view that the New York Life Insurance and Lyles cases insofar as here pertinent were erroneously decided, and that in any event the federal institutional records to which we have referred are sufficiently trustworthy to be competent evidence on the issue of appellant's mental condition. See United States v. Balance, 61 App. D.C. 226, 59 F.2d 1040. It would seem, further, that these records may have been admissible if presented in aid of recollection to the doctors who made them. Shokuwan Shimabukuro v. Higeyoshi Nagayama, 78 U.S.App.D.C. 271, 274, 140 F.2d 13, 16. These doctors, if alive, could have been brought before the court by a further use of the subpoena power provided by Rules 17(a) and (b), Fed.R. Crim.P., 18 U.S.C.A.

'lously avoiding any action that might prevent an impartial consideration by the jury of such evidence as was put before it on the insanity issue. We think there was a failure in this respect. Dr. Leopold, the psychiatrist who testified—the Mental Director, Municipal Court of Philadelphia—said that appellant had 'been in several mental hospitals and assumed he had been for quite a few years in the schizophrenic condition the doctor described. The witness said that he was not giving an opinion as to whether the forgeries were the product of this psychosis which he diagnosed in 1954, as the appellant could have been in a state of remission. The witness repeated, however, that the condition he diagnosed in 1954 had been in existence for several years.

The court itself then detailed the alleged forgeries and asked Dr. Leopold whether appellant's actions, thus described by the court, could accompany or be the product of the type of mental disease the doctor found. The doctor replied they could be present but were not diagnostic of the disease. In answer to a further question of the court he said that if the forgeries were planned deliberately and carried out over a period of months his opinion was that the accused was not in a disturbed psychotic state. In his further testimony, however, in answer to defense counsel's reexamination he said that appellant at the time the checks were allegedly forged and passed might have been suffering from a psychosis, adding that he had "seen individuals who have been suffering with a psychosis and yet able to carry on in a fairly normal manner," and he supposed one could be very clever at the time and still be suffering from a psychosis. Notwithstanding this the trial judge stated to the jury in his charge that Dr. Leopold testified that, if the appellant "had been in a disturbed state at the time, he could not have planned and carried out the crimes charged in this indictment." This seems to us to have pointedly conveyed to the jury an inaccurate appraisal by the court of the full meaning of the crucial testimony of the doctor. Moreover, it practically told the jury that, not withstanding all that was before the court and jury respecting appellant's mental history, his mental disease if it existed could not have caused the crimes. The application to this case of the New York Life Insurance and Lyles rule of exclusion should have led the court to refrain from such an appraisal of the doctor's testimony. Though the court said that the resolution of factual questions was for the jury we cannot escape the conviction that the jury might well have been influenced by the court's comments on the evidence; and since those comments tended forceably to deprive appellant of an impartial consideration of the evidence in an important respect we shall reverse and grant a new trial.[4]

We have considered other questions presented but find in them no basis for reversal.

Reversed and remanded.

4. The Supreme Court recently decided two cases on the question of valid convictions on multiple counts growing out of the same transactions. Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L. Ed.2d 1405, and Hoag v. State of New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L. Ed.2d 913. Another case on the same point is now pending there. Ladner v. United States, 5 Cir., 230 F.2d 726, affirmed by an equally divided Court, 355 U.S. 282, 78 S.Ct. 336, 2 L.Ed.2d 270, re-

hearing granted 356 U.S. 969, 78 S.Ct. 1004, 2 L.Ed.2d 1075. Since we grant a new trial for the reason set forth in the opinion, there would seem to be no occasion to delay the disposition of the case by this court pending the decision of the Supreme Court in Ladner. See also Ciucci v. State of Illinois, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983, and Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370.