George Stine **SMITH**, Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 6001.

United States Court of Appeals
Tenth Circuit.

Nov. 7, 1959.

Murrah, Chief Judge, dissented in part.

Duke Duvall and Ben T. Head, Oklahoma City, Okl., for appellant.

George Camp, Asst. U. S. Atty., Oklahoma City, Okl. (Paul W. Cress, U. S. Atty., Oklahoma City, Okl., on the brief), for appellee.

Before MURRAH, Chief Judge, and BRATTON, PICKETT, LEWIS and BREITENSTEIN, Circuit Judges.

PICKETT, Circuit Judge.

On May 28, 1957 the defendant was convicted on all fourteen counts of an indictment alleging various offenses under the Marihuana and Narcotics Statutes. On the day following, the trial court entered judgment and sentenced the defendant on each of the counts, the sentences to run consecutively for a total term of 52 years, and imposed fines totalling $30,000. On June 6, 1957 a motion for new trial was filed, which motion was overruled on June 10, 1957, and notice of appeal was filed within 10 days thereafter.

At the outset, we are confronted with a jurisdictional question growing out of the application of Rules 33 and 37(a) (2) of the Federal Rules of Criminal Procedure, 18 U.S.C.A. Rule 33 provides that a motion for new trial, except for newly discovered evidence, shall be made within 5 days after a verdict or finding of guilty, or within such further time as the court may, within the 5-day period, allow for its filing. Rule 37(a) (2) has to do with appeals and provides that an appeal may be taken within 10 days after the entry of a judgment or order appealed from "but if a motion for a new trial or in arrest of judgment has been made within the 10-day period an appeal from a judgment of conviction may be taken within 10 days after entry of the order denying the motion." The motion for new trial in this case was not filed within 5 days after the verdict of guilty, but it was filed within 10 days from the date of entry of the judgment and sentence. The United States contends that the filing of a motion for a new trial referred to in Rule 37(a) (2) should be construed to mean a timely motion under Rule 33. In Lujan v. United States, 10 Cir., 204 F.2d 171, we considered this question and held contrary to the present contention of the United States. It is strongly

urged upon us to reconsider and overrule the Lujan case because it permits the preservation of the right of appeal by the untimely filing of a motion for new trial and stands alone among the decisions considering the question.[1] While we recognize that these decisions tend to harmonize the two rules and that Lujan creates an anomalous situation, we have concluded not to recede from our former decision. It appears to us that the provisions of Rule 37(a) (2) are clear and unambiguous and can be changed only by the rule-making authority. Furthermore, we think that appellate courts should overrule previous decisions only for most compelling reasons, particularly where the error cannot be corrected without substantial injury to litigants. 21 C.J.S. Courts §§ 213, 214. See Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233; California State Board of Equalization v. Goggin, 9 Cir., 245 F.2d 44, certiorari denied, 353 U.S. 961, 77 S.Ct. 863, 1 L. Ed.2d 910; Polisnik v. United States, 104 U.S.App.D.C. 136, 259 F.2d 951.

 Considering, then, the points on appeal, the defendant first urges that the trial court erred in overruling his motion for a bill of particulars which requested that the United States be required to furnish him the name of a so-called informer to whom the narcotic sales were allegedly made. Defendant also contends that the court should have granted a continuance to enable him to produce a Wichita, Kansas police officer. In the course of making this request at the beginning of trial, the defense attorney stated that several days earlier he had discovered the informer's identity and then the day before trial had learned that this police officer purported to know the informer's reputation. Clearly the person referred to was more than an informer. He was a special government employee to whom were made the sales of marihuana and narcotics which were the basis for the charges in the indictment. This person was a witness at the trial and was subjected to extensive cross-examination. The record is clear that long before trial, the defendant knew his name and address. Defendant testified that this witness had been in his place of business on the approximate dates of alleged illegal activity set forth in the indictment and that he had some dealings with him on those occasions, but said no narcotics or marihuana were sold to him. Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639, upon which the defendant relies, is not in point. There the alleged sale of narcotics was made to "John Doe", whom the United States refused to identify or produce at the trial, and whose identity was never discovered by the defense. See United States v. Gernie, 2 Cir., 252 F.2d 664, certiorari denied, 356 U.S. 968, 78 S.Ct. 1006, 2 L.Ed.2d 1073. The Supreme Court was of the opinion that, in view of the fact that all the evidence damaging to Roviaro was closely related to the absent witness, his identity and testimony were highly material and fair play required disclosure. The Supreme Court stated that there could be no fixed rule relating to the duty to disclose the name of a government agent in cases of this kind. It was said that "the problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." [353 U. S. 53, 77 S.Ct. 628.] Disclosure is required in those cases where it is essential to a fair determination of the cause and material to the ends of justice. The facts in this case are not such that the ends of justice required a disclosure of the name of the witness before trial. Prior to trial the prosecution furnished the defendant with de-

**1.** Other cases taking a view contrary to the Lujan case or indicating a contrary view are: O'Neal v. United States, 5 Cir., 264 F.2d 809; United States v. Bertone, 3 Cir., 249 F.2d 156; Drown v. United States, 9 Cir., 198 F.2d 999, certiorari denied, 344 U.S. 920, 73 S.Ct. 385, 97 L.Ed. 709; Pugh v. United States, 9 Cir., 197 F.2d 509; Godwin v. United States, 8 Cir., 185 F.2d 411.

tailed information as to when and where the narcotics transactions were alleged to have occurred. We think the evidence is such that a reasonable inference may be drawn that the defendant knew from the date of his arrest who the witness was and where he lived. Furthermore, it is admitted that one of defendant's attorneys had such information at least two days prior to the date of trial, and that he went to Wichita, Kansas to make inquiry concerning the witness. This is disclosed by a statement of defendant's counsel at the opening of the trial on May 27, 1957. He stated that a member of the Wichita police department told him he knew the witness as an informer and had used him in that capacity on a number of occasions; that he had some police record for petty offenses and that he didn't think he was very reliable; that he had information that the witness had been arrested on a narcotics charge in Kansas City, Missouri two or three weeks earlier, but had been released because he was an informer in the case; and that so far as the officer knew, the person had no occupation. Counsel then stated to the court that the defendant "feels that that information and this testimony is essential to his defense and we request the court either to subpoena or to let us take this man's deposition so we may have his testimony to the jury." No showing was made as to the availability of the witness or that he would testify in accordance with the officer's statement. During the trial, the government employee-witness testified as to this criminal record and his occupation, and this testimony is not in substantial conflict with what the Wichita officer had said. The trial court's action on a motion for continuance is a matter of discretion and not subject to review unless the discretion is abused. Hale v. United States, 10 Cir., 242 F. 891; Warren v. United States, 10 Cir., 250 F. 89; Clymer v. United States, 10 Cir., 38 F.2d 581; McShann v. United States, 10 Cir., 38 F.2d 635; United States v. Marzec, 7 Cir., 249 F.2d 941, certiorari denied, 356 U.S. 913, 78 S.Ct.

670, 2 L.Ed.2d 586. Considering counsel's request to take a deposition as a motion for continuance, there was no abuse of discretion in overruling it.

■ We find no merit in defendant's contention that the court's instructions to the jury did not clearly require that the guilt of the accused must be established beyond a reasonable doubt. The defendant refers to statements in the instructions in which the court, in referring to several different counts, used the phrase "if the evidence indicates" that the defendant had possession of narcotics, such possession would be sufficient to sustain conviction unless the defendant explained such possession to the satisfaction of the jury. Preceding this statement in each of the instructions complained of, the court was careful to state that the facts required to establish the guilt of the defendant must be found "beyond a reasonable doubt." The language that possession of narcotics or marihuana, and the absence of appropriate taxpaid stamps made a prima facie case and would authorize conviction unless the defendant explained such possession to the satisfaction of the jury was in conformity with Title 21 U.S.C.A. §§ 174, 176a, and 26 U. S.C.A. § 4704(a). It did not detract from the instruction that the necessary elements of the crime must be found beyond a reasonable doubt.

■ The 4th count of the information charged that the defendant, without having paid the special tax for selling or dealing in marihuana "aided or abetted the selling of, or sold a quantity of marihuana" weighing approximately 185 grains. Defendant contends that these allegations do not meet the requirement of the "reasonable certainty" test. The purpose of an indictment is to inform the defendant of the nature of the offense charged. It is not uncertain if it alleges all essential elements of the offense with sufficient clarity and particularity to enable the defendant to prepare his defense and enable him to plead the judgment as a bar to subsequent prosecution. Frankfort Distill-

eries, Inc. v. United States, 10 Cir., 144 F.2d 824, reversed on other grounds, 324 U.S. 293, 65 S.Ct. 661, 89 L.Ed. 564. All that is necessary is a plain, concise and definite written statement of the essential facts constituting the offense. Cathcart v. United States, 10 Cir., 244 F.2d 74, certiorari denied, 354 U.S. 924, 77 S.Ct. 1387, 1 L.Ed.2d 1439. Although count 4 pleads in the disjunctive, the acts were related and grew out of the same transaction and clearly it was not intended to charge separate and distinct offenses in one count. Travis v. United States, 10 Cir., 247 F.2d 130; Frankfort Distilleries, Inc. v. United States, supra. In addition, the record discloses that during the week preceding the trial, the defendant was informed that he would be tried only for actual sales, and not for aiding and abetting sales. We are satisfied that the count was not subject to a motion to dismiss for duplicity.

 Finally, it is contended that the trial court's 52-year sentence of the 51 year old defendant was cruel and unusual punishment as contemplated by the Eighth Amendment to the Constitution, and this court is requested to effect appropriate relief. The 14 counts in the indictment are based upon one sale of marihuana, two sales of heroin, all on different dates, and possession of a quantity of marihuana and heroin. The pyramiding of such offenses growing out of a single transaction which violates separate sections of the statute, and the imposing of consecutive sentences thereon have been sanctioned by the Supreme Court of the United States in a number of cases. Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L. Ed.2d 597; Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405; Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. The 14 consecutive sentences in this case were imposed for 12 crimes resulting from three narcotics sales and 2 crimes

resulting from possession of marihuana and heroin. The defendant was a first offender, and the record does not indicate that the case was an aggravated one. Although this court, sitting en banc, is not of the view that these circumstances require a holding that the punishment is cruel and unusual, it is of the opinion that the 52 year sentence is greater than should have been imposed. However, the majority believes that under the federal practice, appellate courts are without power to control or modify a sentence which is within the limits fixed by a valid statute. 28 U.S.C.A. § 2106 is cited as authority for an opposite conclusion. It provides:

> "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

This section has been on the books since the Judiciary Act of 1789, but we have been cited to no case in which it has been held authority for the modification or vacation of a sentence within statutory limits.[2]

It has been said that if the prescribed penalty appears to be too harsh, "the remedy must be afforded by act of Congress, not by judicial legislation under the guise of construction." Blockburger v. United States, supra [234 U.S. 299, 52 S.Ct. 182]. In Hayes v. United States, 238 F.2d 318, 322, certiorari denied, 353 U.S. 983, 77 S.Ct. 1280, 1 L.Ed.2d 1142, this court said:

> "The fixing of penalties for crimes is a Congressional function, and what constitutes adequate punishment is ordinarily left to the dis-

2. Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335, considered Section 2106 in connection with the right of an appellate court to remand a crim-
inal case for a new trial after holding the evidence insufficient to sustain the conviction

cretion of the trial judge. If the sentence is within the statutory limit, appellate courts will not interfere unless clearly cruel and unusual."

The subject, including the applicability of Section 2106, was considered in United States v. Rosenberg, 2 Cir., 195 F. 2d 583, 604, certiorari denied, 344 U.S. 838, 73 S.Ct. 20, 97 L.Ed. 687, where it was stated:

" * * * 'If there is one rule in the federal criminal practice which is firmly established, it is that the appellate court has no control over a sentence which is within the limits allowed by a statute.' Gurera v. United States, 8 Cir., 40 F.2d 338, 340."

In the Gore case [357 U.S. 386, 78 S. Ct. 1285], where the court considered sentences identical to those in the case at bar without mentioning Section 2106, the opinion concluded with this statement:

"In effect, we are asked to enter the domain of penology, and more particularly that tantalizing aspect of it, the proper apportionment of punishment. Whatever views may be entertained regarding severity of punishment, whether one believes in its efficacy or its futility, see Radzinowicz, A History of English Criminal Law: The Movement for Reform, 1750–1833, *passim*, these are peculiarly questions of legislative policy. Equally so are the much mooted problems relating to the power of the judiciary to review sentences. First the English and then the Scottish Courts of Criminal Appeal were given power to revise sentences, the power to increase as well as the power to reduce them. See 7 Edw. VII, c. 23, § 4(3); 16 & 17 Geo. V., c. 15, § 2(4). This Court has no such power."

Generally the courts have held that a sentence within the limitations of a valid statute is not "cruel and unusual" punishment. United States v. Rosenberg, supra, and cases cited; Edwards v. United States, 10 Cir., 206 F.2d 855; Hemans v. United States, 6 Cir., 163 F. 2d 228, certiorari denied, 332 U.S. 801, 68 S.Ct. 100, 92 L.Ed. 380; United States v. Sorcey, 7 Cir., 151 F.2d 899, certiorari denied, 327 U.S. 794, 66 S.Ct. 821, 90 L.Ed. 1021; Ginsberg v. United States, 5 Cir., 96 F.2d 433; Jackson v. United States, 9 Cir., 102 F. 473.

This court has used language which might indicate that appellate courts have power to interfere if a sentence is "clearly cruel and unusual," but it has never done so. Hayes v. United States, supra; Richards v. United States, 10 Cir., 193 F.2d 554, certiorari denied, Krupnick v. U. S., 343 U.S. 930, 72 S. Ct. 764, 96 L.Ed. 1340; Schultz v. Zerbst, 10 Cir., 73 F.2d 668. In Moore v. Aderhold, 10 Cir., 108 F.2d 729, 732, we said: "where the sentence imposed is within the limits prescribed by the statute for the offense committed, it ordinarily will not be regarded as cruel and unusual." See also Edwards v. United States, supra.

Until the Supreme Court sees fit to hold that Section 2106 applies in such cases, we think this court should apply what appears to be the fixed rule.

Affirmed.

MURRAH, Chief Judge (dissenting in part).

Since the inception of our federal judicial system in 1789, the appellate courts have been empowered to "affirm, modify, vacate, set aside or reverse any judgment, decree, or order * * * and direct the entry of such appropriate judgment, * * * as may be just under the circumstances." Title 28 U. S.C.A. § 2106, 62 Stat. 963. While the appellate courts have repeatedly denied any such power, they have done so without reference to Section 2106. Judge Frank eschewed consideration of the statute in Rosenberg only because after sixty years of denying power of appellate review, he thought the Supreme Court alone should decide whether the statute conferred authority to reduce the

sentence of a district court which was within the statutory limits.

But no federal court has ever said that the statute does not mean what it plainly says. Indeed, the statute has been made specifically applicable to the appellate review of criminal cases with authority to remand the case and direct the entry of an "appropriate judgment * * * as may be just under the circumstances." See Bryan v. United States, 338 U.S. 552, 553, 70 S.Ct. 317, 320. State courts have construed similar statutes to authorize review and reduction of punishment within the prescribed limits. See cases collected 89 A. L.R. 295. And, this power has been extended to modify a judgment inflicting the death penalty. See Fritz v. State, 8 Okl.Cr. 342, 128 P. 170.

We have recognized appellate authority to review the criminal penalties which are clearly and manifestly cruel and unusual. Schultz v. Zerbst, 10 Cir., 73 F.2d 668, 670; Hayes v. United States, 10 Cir., 238 F.2d 318. To be sure, we have been most reluctant to interfere with the sentencing process, and I have been unable to find any case where we have assayed to exercise that power. We have always been content to leave the matter within the sound discretion of the trial court, and that is where it belongs. But that does not mean that the appellate courts should abnegate a duty imposed by statute when manifest justice requires the exercise of that power. Because we will not ordinarily interfere with a sentence which is within statutory limits does not mean that we are not empowered to do so when it would be manifestly "just under the circumstances."

We all agree that the sentence in this case is "greater than should have been imposed." In these circumstances, I would either modify the sentence and direct the entry of a judgment accordingly, or I would say that the sentence is grossly excessive and remand the case for imposition of another sentence in consonance with our views.