**Ned WOOD, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 7132.**

United States Court of Appeals
Tenth Circuit.

May 27, 1963.

John B. Ogden, Oklahoma City, Okl., for appellant.

Jack R. Parr, Asst. U. S. Atty. (B. Andrew Potter, U. S. Atty., on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

SETH, Circuit Judge.

Appellant was charged in a ten count indictment for sale, trafficking, and related offenses arising from the sale and possession of dilaudid, a narcotic drug. A jury found him guilty and he was sentenced for a total of ten years. The appellant raises several grounds for reversal on this appeal, including the erroneous admission of a confession, other testimony erroneously admitted, entrapment, double jeopardy, failure to provide a prompt trial, and the trial court's failure to grant a continuance.

The two sales which form the basis of the charges were made at different hours on November 19, 1961. There were several later contacts between appellant and the agents to whom the sales were made, but the accused did not know the true identity of the agents until December 22, 1961. On this date the agents arranged for the city police to bring appellant and his wife to the Oklahoma City police headquarters, and this was done sometime between ten p. m. and midnight. Appellant and the agents had met shortly before on that same day.

Upon the arrival of appellant and his wife at the police station, the agents Roberts and Casey identified themselves. Appellant then immediately replied that he had previously learned he had made a sale of narcotics to an agent by the name of Roberts, but he had not "pegged" this man as agent Roberts. Appellant then named his other purchasers and admitted the sales in question. He also named his source of the narcotics, and he and his wife identified a police picture of this man. Appellant then asked the agents if there was anything he could do to help himself. They replied they would like him to introduce an agent to his source of supply, and if he did so they would tell the United States Attorney that he had helped them, but he would nevertheless be prosecuted. Appellant agreed, and the agents told him to keep in touch with them and not to leave town. After this hour and one-half of questioning, appellant and his wife were permitted to leave. The police offered to take them home in a police car as they had come, but they said they preferred to take a cab. Appellant's statements given during this questioning were not reduced to writing.

The city officer who brought appellant and his wife to the police station testified that he did not arrest them, and there is no evidence that they were booked. It is apparent however that they were in some sort of custody. The questioning took place in the police department's records division. The appellant had been an informer for the city police for several years before this incident, and the city officer concerned was acquainted with him.

The fact that the agents had so questioned appellant and his wife was brought out by appellant's attorney on cross-examination of a government witness; however, the portion of this conversation in which appellant admitted the offense was not then mentioned. This witness was then asked on redirect examination to describe what happened during the questioning, and he related the events and the statements of appellant. The only

objection made was to the form of the questions put to the witness. Another officer also testified as to what took place during this questioning without objection other than to the form of the questions. Appellant's attorney cross-examined these witnesses as to why a written statement was not taken. The federal agent who was there present also testified at length as to the admissions made by appellant and all without objection. Appellant's attorney was an experienced one whom appellant had engaged to defend him, and who had represented him in a previous case.

■■ There is nothing in the record to show the admission was other than voluntary. Appellant made it freely almost immediately upon his arrival at the police station for questioning, and thereafter discussed the details. As stated above, appellant brought out on cross-examination the fact that he had been questioned, and then made no objection to the witnesses testifying on redirect as to the details including the admissions. In this respect the case of Tooisgah v. United States, 137 F.2d 713 (10th Cir.), is pertinent for there the substance and circumstances of a confession were already in evidence before objection was made. In the case at bar such substance and circumstances were fully developed and there was no objection made either before or after. The confession here was made of course while appellant was in the custody of the police, but this of itself does not render it inadmissible under United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140. In this cited case, the confession was made upon arrest and if there was any unlawful holding, it was afterwards. The rule as to objections which is applicable to this situation is set out in Moreland v. United States, 270 F.2d 887 (10th Cir.), O'Neal v. United States, 240 F.2d 700 (10th Cir.), and in O'Dell v. United States, 251 F.2d 704 (10th Cir.). In the last cited case there had been no objection to testimony on direct examination as to statements made by an accused outside the presence of his attorney. The court held that there had been a waiver of objection on the ground that the statements were made outside the presence of accused's attorney. It was stated in Reavis v. United States, 106 F.2d 982 (10th Cir.), by this court: "Ordinarily a defendant in a criminal case cannot remain silent when evidence is offered against him and thereafter be heard to complain in respect of its admissibility" (citing Troutman v. United States, 100 F.2d 628 (10th Cir.)). This is applicable here, and if there was any basis for an objection appellant waived it during trial.

■ The appellant also raises the issue of entrapment but this would seem to warrant little discussion. The trial judge instructed on entrapment and no complaint is made as to this. The evidence on the sales of narcotics is uncontradicted and shows that the agent who made the first purchase told appellant that he was the man who was to pick up the narcotics for another person who apparently had contacted appellant. The evidence shows that this agent returned the same day, told appellant he wanted some more narcotics and made the second purchase. The testimony is clear that the agents did no more than afford an opportunity for appellant to commit the offense. These facts are again undisputed and bring the case well within the creation of a simple opportunity to commit a crime as described in Hester v. United States, 303 F.2d 47 (10th Cir.), and in Sandoval v. United States, 285 F. 2d 605 (10th Cir.). See also James v. United States, 309 F.2d 744 (10th Cir.), and cases therein cited. The case of Marshall v. United States, 293 F.2d 561 (10th Cir.), is also comparable. In the cited case the agent gained the accused's confidence through social contacts and made a purchase of drugs. There was no contradictory testimony and it was urged that there was entrapment as a matter of law. The court found otherwise, citing Sorrels v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413, and Sherman v. United States, 356 U.S. 369,

78 S.Ct. 819, 2 L.Ed.2d 848. In the case at bar there was nothing whatever indicating an entrapment of appellant.

■ Appellant next argues that the indictment charges ten offenses when there were but two sales, and that he has been twice placed in jeopardy for the same offense. The separate counts in the indictment for each of the two sales are (1) possession; (2) trafficking, sale without registering or paying the tax; (3) sale not in or from original stamped package; (4) sale not pursuant to an authorized written order; (5) sale of drugs fraudulently and knowingly brought into the United States. The claim of double jeopardy under similar circumstances was considered by the Supreme Court in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L. Ed. 306, in Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405, and in Harris v. United States, 359 U.S. 19, 79 S.Ct. 560, 3 L.Ed.2d 597. Under the standards established by these cases, appellant was not twice placed in jeopardy for the same offense. These cases also discuss the distinction between double jeopardy and multiple count indictments for a single transaction. The test applied to multiple count indictments has been set forth by this court in a series of cases on the authority of the Blockburger case, beginning with Mills v. Aderhold, 110 F.2d 765 (10th Cir.), and extending through Richardson v. United States, 285 F.2d 751 (10th Cir.), cert. denied 365 U.S. 854, 81 S.Ct. 821, 5 L. Ed.2d 818; Craig v. United States, 293 F.2d 272 (10th Cir.), cert. denied 368 U.S. 992, 82 S.Ct. 609, 7 L.Ed.2d 528, and Smith v. United States, 312 F.2d 119 (10th Cir.). Each of the offenses here stated requires proof of different facts in order to establish all its elements, at least to the extent required in Blockburger v. United States, supra, and its descendants, which seems to be minimal. Blockburger survived on a close vote, although after severe criticism by the minority in Gore v. United States, supra. In Smith v. United States, 273 F.2d 462 (10th Cir.), there were three sales of narcotics as a basis for fourteen counts, and this court said that the pyramiding of offenses growing out of a single transaction which violated separate sections of the statute had been sanctioned by the Supreme Court of the United States. This court then said the fourteen consecutive sentences there imposed resulting from the three sales and two crimes resulting from possession of heroin and of marijuana were permissible under the Supreme Court decisions, and these decisions are still binding on us.

■■ Appellant argues that the indictment was not sufficient to inform him of the offense charged. In Smith v. United States, 273 F.2d 462 (10th Cir.), this matter was discussed and we held an indictment to be sufficient against such an attack if it contained a plain, concise and definite statement of the essential facts constituting the offense. Here the indictment met such requirements, as it referred clearly to the two sales and described the dates and circumstances. There could have been no possibility of confusion and appellant was given adequate details to enable him to prepare for trial.

■ Appellant asserts that certain prejudicial evidence was improperly admitted. This concerns statements made by a city police officer who "picked up" appellant and his wife for the December 22, 1961, questioning. This officer testified that when he arrived at their house, he talked to them and to another man present who was then living with them. The officer then testified that he told appellant and his wife, still in the presence of the third man, that he wanted to talk them "about some stolen property." The appellant's attorney objected to this answer but was overruled. This witness on cross-examination clearly explained that he had so stated the purpose for the questioning in order not to arouse the suspicion of the other man who was then present with appellant. We believe the reason for the statement was adequately explained and there was no prejudice to the appellant resulting from the testimony.

██ The appellant asserts that he was not afforded a speedy trial as required by the Constitution. The record shows these events took place on the dates indicated: Date of offenses, November 19, 1961; date of arrest, January 11, 1962; demanded trial, April 11, 1962; indictment, April 25, 1962; made bond, May 11, 1962; trial May 22, 1962. There was certainly no undue delay between the indictment and the trial. Appellant however points to the lapse of time from the offense to the arrest and to trial. In Story v. Hunter, 158 F.2d 825 (10th Cir.), the accused was arrested on October 8, 1942, indicted March 18, 1943, and tried April 20, 1943. This court referred to the indictment date and the trial date and found no objection. In McDonald v. Hudspeth, 113 F.2d 984 (10th Cir.), the indictment was May 4, 1938, and the trial January 24, 1939. The test was there enunciated that the accused should be tried as soon as the orderly conduct of the business of the court permits. See also Hastings v. McLeod, 261 F.2d 627 (10th Cir.). There is no indication in the record that this standard was not followed in the case at bar. There is no indication whatever of any oppressive delay or harassment of appellant. Appellant's brief cites and quotes from many authorities; however the rule in this circuit is as stated above. As to the delay between the sale to the agent and the arrest, if any explanation was necessary, the agents testified that they were also investigating other narcotics suspects in the same area at the same time, and wanted to make all arrests simultaneously. There were about twenty arrests made in the area by the agents on the day appellant was arrested.

██ Appellant on the day of trial moved for a continuance because a witness was in the hospital, having just given birth to a child, and could not be present. The motion was denied and appellant asserts here that he has been denied the right to have compulsory process to obtain witnesses. Appellant engaged his attorney sometime at the end of December 1961. This attorney was present at the preliminary hearing, and at a motion to reduce bond heard on February 9, 1962, and at other hearings. Appellant was in jail in the same city where his attorney practiced law until his release on bond on May 11, 1962. Appellant and his attorney were advised by the court on May 7 and on May 9 that the case would be tried on May 22, 1962. As indicated above, the motion for continuance was made the morning when the case was called for trial. The attorney then told the trial court that he had not talked to this witness and that he did not know the witness existed until the day before, a Sunday. The inability of the witness to be present could of course have been anticipated. Appellant's attorney also told the trial court that he was informed that the witness would testify that the agents told the appellant in her presence that if he would not go out "and entrap people and buy narcotics for them," they would put him in jail and prosecute him, and appellant refused to do this. The record shows that the agents did not make their real identity known to the appellant until December 22, 1961; thus the testimony of the witness could only relate to a conversation which took place on or after that date. This was of course about a month after the date of the offenses. Thus the witness would not testify as to the crime itself, nor as to entrapment, nor as to the situation surrounding the confession. Her testimony could only relate to an attempt by the agents to use appellant as an informer. The record shows that he had been an informer for the local police, and the inferences from the agents' testimony certainly include their desire to use appellant to lead them to sellers of narcotics. The appellant had offered to do something to help himself, and the agents accepted his offer. There appears to be nothing in this matter which adversely affected the rights of the accused insofar as this proceeding is concerned. The trial judge exercised his discretion in ruling on the motion for continuance and it was not abused. Smith v. United

States, 273 F.2d 462 (10th Cir.); Clymer v. United States, 38 F.2d 581 (10th Cir.).

Appellant urges other grounds for reversal, but they are without merit.

Affirmed.