James L. OTNEY, Appellant,

v.

UNITED STATES of America, Appellee.

No. 7773.

United States Court of Appeals Tenth Circuit.

Jan. 26, 1965.

Gene D. Reneau, Denver, Colo., for appellant.

Benjamin E. Franklin, Asst. U. S. Atty. (Newell A. George, U. S. Atty., with him on brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and LEWIS, Circuit Judges.

MURRAH, Chief Judge.

Appellant-Otney was convicted by a jury and sentenced for violation of the National Motor Vehicles Theft Act, 18 U.S.C. § 2312. From the trial Court's order overruling a motion for new trial, he brings this appeal asserting prejudicial error in the admission of (1) certain documentary diagnostic evidence of his mental competency under the Federal Shop Book Act; (2) his admittedly voluntary confession, made while in custody and without the advice of counsel; and (3) testimony of the psychiatrist who examined him pursuant to 18 U.S.C.

§ 4244. He also complains of the instructions on the issue of insanity, contending that the Court failed to clearly tell the jury that, as a matter of law, the presumption of sanity had been dissipated by the evidence; and, that the burden was upon the Government to prove him sane, as an essential element of the offense charged. Finally, he complains of the Court's definitive instruction on criminal responsibility.

The issue of criminal responsibility for the offense charged was raised early in this proceedings. On appellant's motion alleging "a long history of mental illness," the trial Court ordered a psychiatric examination at the Springfield Medical Center, pursuant to 18 U.S.C. § 4244, to determine his mental competency to stand trial. Again on appellant's motion, certain medical records of the Central State Hospital at Norman, Oklahoma were ordered produced and placed in custody of the Clerk to be "available for inspection by both parties to this action." Following a hearing and determination of Otney's competency to stand trial, the Court again granted his motion for examination by a psychiatrist of his choice to testify in his defense at Government expense. Being thus aware of appellant's claim of mental incompetency, the Government initially undertook the burden of proving his criminal responsibility as an essential element of the offense charged. See: Phillips v. United States (10 CA), 311 F.2d 204; Fitts v. United States (10 CA), 284 F.2d 108; and Fitts v. United States (10 CA), 335 F.2d 1021.

The trial Court instructed the jury that, "Under his plea of 'not guilty' the defendant has raised the issue of his sanity at the time of the alleged offense. The law does not hold a person criminally accountable for his conduct while insane. Unless and until reasonable doubt of his sanity appears, the law presumes the defendant sane. But whenever, from all the evidence in the case, the jury has a reasonable doubt of his sanity, the defendant should be found insane." When at the conclusion of the instructions, the Court inquired of Government counsel if he had "any further requests or objections to the Court's instructions other than previously submitted," counsel replied, "There was one Your Honor, that crossed my mind. And that is, I think it is set out in the Fitts case, when a person has a previous record of mental disorder that that gives rise—that knocks down the presumption of sanity and puts the burden on the Government in the beginning to prove sanity." The Court then observed that the instructions given "have placed the burden upon the Government." Counsel for the defendant then stated, "I had the same impression that Mr. Franklin [Government's counsel] had with respect to the presumption. We would renew our request to the instruction, particularly the one on presumption * * *." The Court's attention was called to Phillips v. United States, supra; and Fitts v. United States, supra.

The effect of the challenged instruction, when considered in its context, was to tell the jury that the law presumes the defendant sane until sufficient evidence is introduced to raise a reasonable doubt of his sanity, and the jury was left to decide the sufficiency of the evidence to generate the requisite reasonable doubt. This instruction is contrary to the established rule in this Circuit and elsewhere to the effect that "the sufficiency of the evidence to dissipate the presumption of sanity and raise the issue of insanity is one of law for the court to decide in the first instance." Fitts v. United States, supra, 284 F.2d p. 112. And, "any relevant evidence of mental illness before or after the offense is sufficient to dissipate the legal presumption * * *." Phillips v. United States, supra, 311 F.2d p. 205. The sufficiency of the evidence to overcome the legal presumption of sanity was not within the province of the jury or of concern to it. It was, therefore, prejudicial error for the Court to submit this issue to the jury. Instead, the Court should have determined, as a matter of law, that the presumption of sanity

no longer existed and accordingly instructed the jury that the defendant's mental competency to commit the offense was an essential element of the offense charged and the burden was upon the Government to prove the defendant's criminal responsibility beyond a reasonable doubt.

Appellant also complains of the Court's refusal to instruct in accordance with Currens (United States v. Currens, 3 Cir., 290 F.2d 751). The instructions were in accordance with Coffman v. United States (10 CA), 290 F.2d 212, and were given before our decision in Wion v. United States (10 CA), 325 F.2d 420. On re-trial of the case, the Court will, of course, follow the simplified definition of criminal responsibility in Wion, decided since the trial of the case. Since the case must be reversed, we will consider the other assignments of error only because the questions may recur upon re-trial.

As one of its first witnesses, the Government called the custodian of the records at the Oklahoma Central State Hospital. This witness testified to Otney's admittance in that institution pursuant to an Oklahoma State court order in 1952 and 1955, and identified the daily compilation of clinical data during his confinement. He was then permitted to read to the jury a diagnostic letter-report directed to the Oklahoma court, written in 1955 by the then hospital Superintendent. In this letter-report the Superintendent expressed the opinion that Otney was "entirely sane and legally responsible for the alleged offense" and "considered able to stand trial for any charges presently pending against him." Appellant's objection to the introduction of this evidence as hearsay was overruled on the ground that it went to its weight and not admissibility.

This evidence was apparently admitted under the Federal Shop Book Act (28 U.S.C. § 1732), as a "transaction, occurrence or event, if made in regular course" of the hospital business. There are sharply divided views concerning the admissibility of psychiatric opinion evidence made in the course of examination and treatment of a hospital patient. Those who would exclude the evidence as hearsay do so on the hypothesis that the admission of the naked record of the psychiatrist's opinion without an opportunity to cross examine is plainly not warranted by the language or history of the Shop Book Act. They draw a "distinction between the reasonable reliability of recorded facts on the one hand, and controversial technical opinions on the other" and they regard the "difference between a 'fact' (such as an act, transaction, occurrence or event) and an 'opinion' ", as fundamental in the law of evidence. Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725, 731. See: Polisnik v. United States, 104 U.S. App.D.C. 136, 259 F.2d 951. Those who favor the admission of the opinion evidence do so on the theory that the diagnostic opinion made in the course of treatment is a recorded occurrence or event made in the course of the business of operating a hospital which requires records of the histories of patients, reports of unusual conduct and also diagnoses by physicians. They can see no basis for drawing a distinction between diagnoses of mental illness and diagnoses of physical illness or, for that matter, between "facts" and "opinion". See: Judge Bazelon dissenting in Lyles v. United States, supra, 254 F.2d p. 736. The minority view in Lyles was upheld in the Fourth Circuit. See: Thomas v. Hogan, 4 Cir., 308 F.2d 355. Chief Judge Sobeloff, speaking for the Court, thought there was good and sufficient reason "to treat a hospital record entry as trustworthy. Human life will often depend on the accuracy of the entry, and it is reasonable to presume that a hospital is staffed with personnel who competently perform their day-to-day tasks. To this extent at least, hospital records are deserving of a presumption of accuracy even more than other types of business entries." Supra, 308 F.2d p. 361. The learned treatises on the subject all seem to advocate a liberal construction of the Federal Shop Book

Act to admit all such records as having been thoroughly tested for their accuracy and trustworthiness. See: 5 Wigmore, Evidence (3d ed. 1940), § 1422; 59 Harvard Law Rev. 559; 54 Yale Law Journal 868; and 48 Columbia Law Rev. 920.

■■ All the criminal cases we have noticed involve the admissibility of the recorded expert opinion on behalf of the defendant, tending to show mental incompetency as a defense to the offense charged. None of the cases we have seen deal with the admissibility of the opinion to prove mental competency as an essential ingredient of the offense charged. Nor have we found any learned writings on this particular side of the question. Our research has not uncovered any decision or commentary on the question whether the admission of an opinion of mental competency, made in the course of treatment in a hospital, violates the constitutional right of an accused " * * * to be confronted with the witnesses against him; * * *." Sixth Amendment. We seriously doubt that the Federal Shop Book Act was intended to obviate or in any way impair this basic constitutional right. But, we need not adopt either of the conflicting views or resolve the constitutional question. For we are convinced that given its most liberal construction, the Act was never intended to apply to written psychiatric opinions made for purely evidentiary purposes, whether the examination was made in a hospital, a clinic, the doctor's office, or elsewhere. We know that even mental hospitals are not maintained for the primary purpose of providing a place to conduct examinations from which opinion evidence is gathered. The sole purpose of the accused's confinement in the Oklahoma hospital was to enable the psychiatrists to inform the State Court whether or not he was then criminally responsible and mentally competent to stand trial. There is nothing in this record to indicate that the letter-report was made in the "regular course" of the hospital business, where patients are generally treated and cured and it was, therefore, inadmissible

under the Federal Shop Book Act. See: Palmer v. Hoffman, 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645.

Appellant's confession was also admitted in evidence over his objection after identification by a federal agent, who testified that it was obtained during an interview with Otney shortly after he was arrested on a warrant and brought before the United States Commissioner. The agent testified that during the interview, Otney was advised of his right to consult counsel and that any statement made could be used against him; that he admitted his guilt in response to interrogation; and, that the written statement was then prepared by the agent and signed by Otney, after certain initialed corrections.

Otney claims that the written confession is inadmissible because made without the advice of counsel and when he had not intelligently waived his right to the benefit of counsel. The Government first takes the position that since the confession was obtained after Otney's appearance before the Commissioner pursuant to Rule 5, F.R.Crim.P. and before his arraignment on a formal charge, the examination resulting in his confession was not a stage of the proceedings against him at which he was entitled to the assistance of counsel. The Government moreover takes the position that it must be presumed that the Commissioner, following the admonition of Rule 5(b), informed Otney (1) of the complaint against him; (2) of his right to retain counsel and have a preliminary examination; (3) that he was not required to make a statement and any statement made could be used against him; and (4) that he would be allowed a reasonable time and opportunity to consult counsel; and, that having been thus advised of his right to retain and consult counsel by the Commissioner and by the examining agent, as reflected in the body of the confession, Otney must be presumed to have intelligently waived his right to advice of counsel before making the confession.

It is the view of the writer that at the time this confession was obtained, Otney was an "accused" person within the rationale of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and their progenitors, and as such, constitutionally entitled to the advice of counsel, which he did not effectively waive before making the extrajudicial confession. My associates disagree with this view, however, and they will state the law of this case on remand. I shall briefly state the reasons for my view on the record.

As I read Massiah and Escobedo, they plainly say that any extra-judicial examination of an accused person for the purpose of eliciting incriminating statements from him is a critical stage of the proceedings against him, and he is, therefore, entitled to advice of counsel before making any statement. While the facts in those cases are unlike ours, they leave no doubt in my mind that Otney was an "accused" person—"a defendant"—at all times after his appearance before the Commissioner in response to the complaint against him, and was therefore entitled to the advice of counsel before being interrogated for the purpose of eliciting an incriminating statement. It is at this stage of the proceedings that the need for advice and assistance of counsel is most critical, for after confession of guilt, the only defense to it is its voluntariness. This usually leads to complexities which we surely ought to avoid. See: Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

As we know, Rule 5 clearly contemplates that a person arrested on a complaint shall be brought before a Commissioner and informed of the complaint against him and of his right to retain and consult counsel before making any incriminating statement. See: McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; and Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. It is wholly inconsistent to say that he is not thereafter an accused person; hence, constitutionally entitled to the assistance of counsel. Indeed, the Government does not seem to deny that Otney was entitled to retain and consult counsel before making any incriminating statement, and surely no one will contend that he was not entitled to the appointment of counsel if he was financially unable to retain one.[1] "[N]o meaningful distinction can be drawn between interrogation of an accused before and after formal indictment." Escobedo v. State of Illinois, supra, 378 U.S. p. 486, 84 S.Ct. p. 1763. But, there is a distinction to be drawn between the admissibility of a confession obtained pursuant to an extra-judicial examination for that purpose and voluntary statements made to officers in the course of routine investigation. See: Walton v. United States (10 CA), 334 F.2d 343; and Latham v. Crouse (10 CA), 338 F.2d 658. "The mere fact that a confession was made while in custody of the police does not render it inadmissible." McNabb v. United States, supra, 318 U.S. p. 346, 63 S.Ct. p. 615. Otney's confession having been taken pursuant to examination, while he was an accused person without benefit of counsel, it must be excluded unless, as the Government contends, it can be said that he effectively waived his constitutional right.

It may be presumed, as the Government suggests, that in obedience to the admonitions of Rule 5(b), the Commissioner fully advised the appellant of his right to retain and consult counsel. But,

[1]. In consonance with this concept, the Criminal Justice Act of 1964, Public Law 88–455, 78 Stat. 552, provides that "In every criminal case in which the defendant is charged with a felony or a misdemeanor, other than a petty offense, and appears without counsel, the United States commissioner or the court shall advise the defendant that he has the right to be represented by counsel and that counsel would be appointed to represent him if he is financially unable to obtain counsel."

there is nothing in the Rule which requires or empowers the Commissioner to advise the accused person of his right to the appointment of counsel, in the event of his financial inability to retain one. There is nothing on this record to indicate that Otney was so informed, prior to the making of the instant confession. In these circumstances, we should indulge in the presumption against waiver, for counsel must be furnished whether or not the accused requested appointment. See: Carnley v. Cochran, 369 U.S. 506, 82 S.Ct. 884, 8 L.Ed.2d 70; and Sandoval v. Tinsley, Warden (10 CA), 338 F.2d 48.

Finally, appellant complains of the admission in evidence of the testimony of the Government's psychiatrist, on the ground that having examined the accused pursuant to 18 U.S.C. § 4244, "No statement made by the accused in the course of any examination into his sanity or mental competency provided for by this section, whether the examination shall be with or without the consent of the accused, shall be admitted in evidence against the accused on the issue of guilt in any criminal proceeding." The doctor's report formed the basis for the trial Court's pre-trial determination of Otney's mental competency to stand trial. The doctor was produced as a witness for the Government to testify concerning the accused's competency to commit the offense. In permitting the doctor to testify over appellant's objection, the trial Court specifically instructed counsel for the Government, "Be very cautious now that he doesn't testify to anything that the defendant told him, nor * * * as to what his findings were that were presented to this Court." Our examination of the record fails to disclose any violation of the statute or the instructions of the Court, except upon the invitation of ap-

pellant's counsel. In any event, the matter is now mooted and is not likely to recur.

Reversed.

LEWIS, Circuit Judge, with whom PHILLIPS, Circuit Judge, joins (concurring).

I concur in the result and in the views expressed by Chief Judge MURRAH except as they pertain to the admissibility of Otney's confession. To me, the solid premise of the Supreme Court's opinion in Escobedo lies in the affirmative denial to that accused of his constitutional right to consult counsel. Such denial had a direct causal bearing upon the voluntariness of the confession both in fact and in law, and, indeed presented a factual background that many would consider as bordering on legal outrage. But the case at bar presents a much different picture. Here, the appellant, after arrest and appearances before the United States Commissioner and after being fully advised of his right to counsel by both the Commissioner and the federal interrogator, simply told of his participation in the crime. Nothing was denied to him and, unless an accused's mouth becomes legally closed after his right to counsel attaches and regardless of all else, a generality which this court has negatived, Latham v. Crouse, 10 Cir., 338 F.2d 658, Otney's confession was not tainted by a violation of his right under the Sixth Amendment. Other Courts of Appeals, in interpreting Escobedo under circumstances much more suspect than those in the instant case, have reached similar conclusions. Long v. United States, D.C. Cir., 338 F.2d 549; Jackson v. United States, D.C. Cir., 337 F.2d 136; Davis v. State of Carolina, 4 Cir., 339 F.2d 770 (en banc).

The confession was properly admitted.