Gerald **WEBBER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 9781.

United States Court of Appeals Tenth Circuit.

May 29, 1968.

Rehearing Denied June 20, 1968.

Dean W. Borthwick, Cheyenne, Wyo., for appellant.

Leroy V. Amen, Asst. U. S. Atty., Cheyenne, Wyo. (Robert N. Chaffin, U. S. Atty., Cheyenne, Wyo., on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and HILL, Circuit Judges.

HILL, Circuit Judge.

This is a direct appeal from a judgment of conviction and sentence after a jury verdict finding appellant guilty of transporting a stolen motor vehicle from Casper, Wyoming, to Regina, Saskatchewan.

The evidence on behalf of the Government presented a strong and convincing case and may be summarized as follows.

The vehicle in question was owned by Max Auto Sales and was stolen from its sales lot in Casper on April 28, 1967. Appellant had resided in Casper for several weeks prior to this date. On April 28, appellant came to the sales lot as a prospective car buyer, introduced himself as Frank Schleiger and was permitted to test drive the 1966 Ford Mustang car, which is the car in question, for about an hour. This car was missing from the sales lot early the following morning. Under the evidence it was next seen in the Province of Saskatchewan, Canada, on May 4, 1967, when it was being driven by appellant and where it was involved in an accident. There were no license plates on the car while it was on the sales lot but when first seen in Canada by a Canadian Mounted Policeman it had a license plate on it issued by the State of Washington to one Frank Schleiger, which was an alias used by appellant. At the time of arrest in Canada, appellant advised the officer that he was the owner of the Ford Mustang. The manager of the Casper sales lot positively identified the car recovered in Canada from appellant as the vehicle stolen from the sales lot.

■■ Appellant strongly urges here that the Government failed to sustain its burden of proving him sane after the issue of insanity was injected into the trial. As he contends, the Government does have the burden of proving beyond a reasonable doubt the mental capacity of an accused to commit the offense charged when the issue of mental competency is raised.[1] Under such circumstances, this court, in Wion v. United States, 325 F.2d 420, set out the guidelines for determining whether the Government has met its burden in a particular case. There Chief Judge Murrah, speaking for an en banc court, stated "The jury is then to be told that, as applied to their case, the test for criminal responsibility means that before they may return a verdict of guilty, they must be convinced beyond a reasonable doubt that at the time the accused committed the unlawful act, he was mentally capable of knowing what he was doing, was mentally capable of knowing that it was wrong, and was mentally capable of controlling his conduct." Id. at 430.

We will look at the record in the case in the light of Wion. The Government, in its case in chief, put on its evidence as to appellant's participation in the crime charged and rested. The appellant then came forward and asserted the defense of insanity. One of the witnesses for the defense on this issue was Dr. Herrold, who specializes in psychiatry at Cheyenne, Wyoming. The doctor had been appointed by the trial judge to examine the accused and to determine if he was mentally competent to the extent that he understood the nature of the charge against him and would be able to properly assist in his own defense. The doctor's report, prior to trial, had been in the affirmative. Dr. Herrold's testimony at the trial was not very beneficial to the defense. On cross-examination, the doctor testified, in substance,

---

[1]. E. g., Davis v. United States, 10 Cir., 364 F.2d 572; Phillips v. United States, 10 Cir., 311 F.2d 204.

that even if the defendant, on the date of the crime, had as claimed, taken a large quantity of the drug desoxyn together with alcohol, he would not have been rendered incapable of knowing what he was doing for more than a few hours and that such condition certainly would not have lasted from April 28 to May 4. The doctor also testified that a person rendered incapable of knowing what he was doing by the above means would not be able to drive a car very far because the eye muscle co-ordination would be seriously affected.

In rebuttal, the Government called Dr. Brown, a physician and surgeon in Casper, Wyoming, who had studied psychiatry as a part of his medical training and who, within the judgment of the trial judge, was qualified in the field of psychiatry. This doctor had examined the accused on April 12, 1967, prior to the date of the offense at the request of local authorities at Casper. Dr. Brown gave the opinion that Webber was sane on the date of the examination. The doctor saw Webber again on April 15 and testified that on both occasions the accused "knew the difference between right and wrong," that "he had the mental capacity to understand the nature and character of his conduct" and that there was nothing about the accused "that would deprive him of the ability of the governing power of his mind."

Considering this expert testimony, together with all of the other evidence in the record, we must conclude that there was sufficient evidence from which the jury could find, as it did, beyond a reasonable doubt, that the accused was not mentally incompetent as tested by Wion v. United States, supra.

■ The instructions given to the jury on the defense of insanity are at-

tacked by appellant. We have carefully considered all of these instructions and they do embody all of the teachings of the Wion case. It is true that they are lengthy, probably unnecessarily so, because there is some repetition in them. They are in no way inconsistent with Wion or any of the other cases from this circuit on mental incompetency. The attack upon them is not well founded.

■■ Appellant's next contention related to his alibi defense. In this connection, it should first be pointed out that counsel for the defendant, in his opening statement to the jury, relied only on the defense of insanity and made no mention of the alibi defense. Likewise, from a reading of the testimony of appellant, who took the witness stand in the trial, there is no indication there of an alibi as the whole of his testimony goes to the issue of insanity. Appellant urges that his Constitutional rights were violated because the trial judge did not compel the attendance of three witnesses, presumably all Canadian nationals, to be used as alibi witnesses. As to these three witnesses, the trial judge ordered that written interrogatories be submitted by both the defense and the prosecution, because of the inability of the three persons to personally appear and testify at the trial. Two of these persons answered and returned the interrogatories and the third did not. The two sets of interrogatories returned were admitted into evidence on behalf of the defendant and read to the jury with a special instruction from the court concerning them.[2]

We know of no statute or rule that would have authorized the issuance of subpoenas and thereby compelled these three Canadian nationals to appear in court in the District of Wyoming and

2. "THE COURT: Yes. I might explain to the jury that a defendant in a criminal case is permitted to submit interrogatories to those individuals who might be his witnesses. The Government can submit written cross-interrogatories to the interrogatories submitted by the defendant.
"Now, the Government, of course, isn't permitted to submit written interroga-

tories; the defendant is entitled to be confronted by all witnesses who appear against him.
"You will give these interrogatories the same weight and credit that you would to depositions, that all of you have heretofore heard. They are given under oath to the same extent as if the witnesses were here present and testified in person."

testify in this case.[3] The trial judge did all that he could have possibly done to give the defendant the benefit of the testimony of these three prospective witnesses. The jury, nevertheless, had the testimony of two of these witnesses and we must assume, in the absence of a showing to the contrary, that this testimony was considered by the jury, along with all of the other evidence in the case, but it was rejected by the jury. Appellant also complains because the two sets of interrogatories were not given to the jury together with the exhibits to be taken to the jury room. We do not consider the sets of interrogatories as exhibits. They are in the same category as depositions and the trial judge is not compelled to send them to the jury room. If he did give them to the jury, he would be giving more significance to that evidence than to the oral testimony in the case. Under the facts we certainly could not say that appellant was deprived of any Constitutional right because the three witnesses were beyond the jurisdiction of the trial court or of the Government of the United States.

■ Appellant further argues that he was not afforded a fair, speedy and impartial trial as guaranteed by the Constitution. Little need be said about this broad and sweeping claim. He was taken into Federal custody May 11, 1967, at Minot, North Dakota, on a warrant issued by a United States Commissioner, and on May 21 was transported to the District of Wyoming. Counsel was appointed by the United States District Judge on June 21 and on that date appellant and his appointed counsel appeared before the court. Appellant, at that time, declined to waive indictment and was returned to confinement awaiting the calling of a grand jury in the district. Subsequently and on July 31, appellant again appeared in court with his counsel, waived indictment, consented to prosecution by information and was arraigned upon the information. On this occasion he entered a plea of not guilty and a trial date of August 17 was fixed. The trial was had on that date and a verdict of guilty resulted.

In Wood v. United States, 10 Cir., 317 F.2d 736, Judge Seth succinctly stated the rule followed in this circuit concerning speedy trials in criminal cases. There, he said " * * * the accused should be tried as soon as the orderly conduct of the business of the Court permits." Id. at 740. There is nothing in the record to indicate nor has appellant made any showing that the lapse of three months and six days between the time appellant was taken into Federal custody and the trial resulted in any oppressive delay, harassment, discrimination or prejudice to appellant. We reject this contention.

■ It is also urged that, because appellant was not satisfied with his court appointed counsel, he was denied the Constitutional right to the effective assistance of counsel. We have observed the conduct of counsel from the record before us and again disagree with appellant. The record shows that counsel conducted himself at the trial in a lawyer-like manner and vigorously and conscientiously conducted the defense of the case. This court has spoken many times on "ineffective assistance of counsel"[4] and the record here, measured by those cases, does not support that contention.

We have reviewed the entire record before us and are unable to find substance to any of the points raised here by appellant. We must conclude that he was given a fair and impartial trial, notwithstanding the adverse result from his viewpoint.

Affirmed.

3. Rule 17(e) (2), F.R.Crim.P. provides that "a subpoena directed to a witness in a foreign country shall issue under the circumstances and in the manner and be served as provided in Title 28 U.S.C. § 1783."

§ 1783 provides for subpoena service in a foreign country only upon a national or resident of the United States.

4. Tafoya v. United States, 10 Cir., 386 F. 2d 537; Johnson v. United States, 10 Cir., 380 F.2d 810; Alire v. United States, 10 Cir., 365 F.2d 278; Williams v. Cox, 10 Cir., 350 F.2d 847.